[No. 10127. Department Two. September 23, 1912.]

## R. A. THAYER, *Appellant*, v. HENRY HARBICAN, *Respondent*.[1]

ATTORNEY AND CLIENT—CONTRACT OF EMPLOYMENT—MEETING OF MINDS—RECOVERY ON QUANTUM MERUIT. Where duplicate copies of a contract employing an attorney do not correspond as to the amount of compensation, one containing an interlineation, which was not specially called to the attention of the signers, and it is admitted that both copies were signed by the parties, in the absence of evidence of any meeting of the minds upon the disputed clause, there can be no recovery on the contract upon the point in issue, and the attorney performing the service is entitled to recover only upon *quantum meruit*.

PLEADINGS—AMENDMENTS TO CONFORM TO PROOF. Upon failure of proof as to the terms of a contract of employment, the complaint should be deemed amended to conform to proof of *quantum meruit* for the services performed.

MORTGAGES—FORECLOSURE—ATTORNEY'S FEES—REASONABLENESS—ESTOPPEL. Under Rem. & Bal. Code, § 475, limiting the amount which a mortgagee may collect as an attorney's fee to a reasonable sum, the mortgagee, on collecting a fee, is estopped to assert as against his attorney, that the sum collected was unreasonable.

ACCORD AND SATISFACTION—CHECK IN FULL PAYMENT. A check given in full but retained with notice to the drawer that it would be applied on account only, does not constitute an accord and satisfaction, where there could be no *bona fide* dispute between the parties as to the sum that was due.

Appeal from a judgment of the superior court for Spokane county, Hinkle, J., entered May 19, 1911, upon the

[1]Reported in 126 Pac. 625.

verdict of a jury rendered in favor of the defendant, in an action on contract. Reversed.

*Belden & Losey*, for appellant.

*Benson Wright*, for respondent.

ELLIS, J.—This action was brought to recover an attorney's fee upon what the plaintiff claims was the written contract of employment. The defendant admitted employing the plaintiff under a written contract, but set up a different contract from that claimed by the plaintiff. The cause was tried to a jury. A verdict was returned in favor of the defendant. The plaintiff's motion for a new trial was overruled. From a judgment entered upon the verdict, the plaintiff has appealed.

It is admitted that the appellant, an attorney of Colville, Washington, was employed by the respondent to foreclose two mortgages, aggregating about $6,000, held by the respondent upon certain real estate situated in the town of Newport. The contract which the appellant claims was the real written contract of employment, and which was produced by him at the trial, was typewritten, excepting the date, the name of the appellant, the names of the mortgagors, the description of the mortgaged property, the signatures of the parties, and the italicized words in that part of the writing fixing the appellant's compensation on three contingencies, which reads as follows:

"(1) In case said action is settled prior to judgment, said first party is to receive *fifteen* per cent of amount for which the action is settled.

"(2) In case of foreclosure and sale of said property, and due confirmation of the sale, said first party is to receive *twenty-five* per cent of the attorney's fees allowed by the court in said action.

"(3) In case of foreclosure and sale of the said property, and the second party is required to purchase the same in order to protect his interest, then said first party is to receive *twenty* per cent of the attorney's fees allowed by the

court in said action. Above provisions as to attorney's fees for services shall apply to all courts."

It is admitted that it was the intention of both parties to execute the contract of employment in duplicate, so that each might have one of the duplicates. The contract produced by the respondent, and which he claims was the real written contract of employment, was in all respects like that produced by the appellant, save that the words "of attorney's fees" which we italicize appeared in the following clause by interlineation with a pen.

"(1)    In case said action is settled prior to judgment, said first party is to receive fifteen per cent of amount *of attorney's fees* for which the action is settled."

It is also admitted that, when the respondent went from his home in Spokane to Colville to negotiate for the employment of the appellant, he took with him the two typewritten forms for contract, but the respondent testified in effect that he had, prior to that time, interlined the words "of attorney's fees" in one, and failed to do so in the other. Both parties testified that the contracts, save these words, were filled out by the appellant in his office in Colville in the respondent's presence. The appellant testified that the interlined words "of attorney's fees" were not in either of the contracts when he and the respondent signed them in his office. Both parties admitted their signatures to both contracts. The respondent, when shown the contract produced by the appellant, admitted that it was in the same condition as when he and the appellant signed it, but insisted that the contract which he himself produced was also in the same condition as when he and the appellant signed it. Both admitted the mutual delivery of the papers on the day of their date, October 25, 1910.

The appellant entered upon the employment, filed a complaint for foreclosure of the mortgages, and placed a summons thereon in the hands of the sheriff for service. The mortgagor, learning of this, made overtures for settlement,

and a settlement was arranged through the appellant whereby the mortgagor paid to the respondent the sum of $6,869.97, including the principal and interest of the notes secured by the mortgages, the taxes and insurance premiums paid or incurred by the mortgagee and interest on these sums, court costs and other expenses and an attorney's fee of $300. The respondent agreed to this settlement in a letter written to the appellant closing with the following agreement:

"I agree to turn over to Mr. R. L. Rutter of Spokane, Washington, the cancelled mortgages and notes sued upon, the abstract to the property, the insurance policy held by me and releases of the mortgages herein sued upon . . . . upon Mr. Rutter paying to me the amount above stated as settlement made by you with Mr. Fiedler, and I further agree to pay you the commission as stated in our contract of October 25, 1910, and upon receiving same you are to dismiss the above entitled cause of action."

The appellant set up this agreement as confirming the contract of employment which he produced at the trial. The respondent answered that this agreement was coerced by the appellant, in that he threatened to dismiss the foreclosure suit if the respondent did not sign it. Whether this promise was coerced or not, it cannot be construed as a confirmation of the contract as claimed by the appellant. It does not appear that at that time any question had arisen as to what the contract was. The promise might refer as well to the contract as claimed by the respondent as that claimed by the appellant. It has no probative effect as to what the contract really was.

It must be admitted that the disputed clause, as it appears in the writing produced by the respondent, makes the entire contract more homogenius and consistent. It makes the clause more in keeping with the two succeeding clauses, since it provides the smallest fee for the least work and makes it a percentage of the fee recovered as is the case in the other two contingencies. It cannot be successfully argued

that the largest fee would be provided in case of a settlement because the respondent might not want the land but might prefer the money, since the second contingency provided for, which evidently relates to a purchase by a third party at foreclosure sale would also give the respondent his money; yet in that contingency the writings produced by both parties provided for a percentage of the fee allowed by the court in the foreclosure action, which percentage would obviously be much less than that provided in the writing produced by the appellant for the contingency of a settlement before judgment.

On the other hand, the appellant testified, and the respondent admitted, that the writing produced by the appellant had not been changed but was in exactly the same condition when produced at the trial as when the appellant signed it. But for this admission, the question as to which was the true contract of the parties might properly have been submitted to the jury. The respondent does not claim that he called the interlineation in his own copy of the writing to the attention of the appellant While both parties testified that the terms of the employment were discussed before the papers were signed, neither party testified to what was said in arriving at an agreement, so that we have nothing further than the writings themselves to show what was the real intention or agreement of the parties. There was absolutely no evidence of a meeting of the minds of the parties on the subject-matter of this disputed clause. There was no evidence to sustain a finding by the jury that there was any contract as to the amount of the attorney's fee to be paid to the plaintiff in case of settlement of the foreclosure suit before judgment. But the plaintiff performed the service. He effected the settlement. He is entitled to the reasonable value of his services. Having failed in this action to establish the express contract, he can still maintain another action upon the *quantum meruit* for the same services. The judgment in this action is not a bar to such an action, since

it requires different evidence to establish the two causes of action. *Buddress v. Schafer,* 12 Wash. 310, 41 Pac. 43.

In the record before us, however, we have indisputable proof as to what was the reasonable value of the services. It is found in the amount exacted from the mortgagor by the appellant with the respondent's approval. Both parties admit that $300 was collected from the mortgagor as an attorney's fee, and that the respondent has received that sum as an attorney's fee. The appellant had no right to exact that sum and the respondent had no right to receive it, except as a reasonable attorney's fee for the work done. They are both, under these circumstances, estopped to say that the amount so exacted and paid was not the reasonable value of the attorney's services. The rights of the parties being thus established by the admitted facts, the plaintiff was entitled to judgment, as a matter of law. The trial court should have directed an amendment of the complaint to conform to these facts, instructed a verdict for the plaintiff for $244, being the amount of the attorney's fee collected, less $56 which it is admitted the respondent has paid to the appellant, and entered judgment accordingly.

But the respondent claims a further defense. He pleaded and sought to prove a settlement with the appellant in full. After the settlement of the foreclosure suit and payment to the respondent of the mortgage debt, he mailed to the appellant a check for $50 bearing the words, "This is payment in full for your services in the case of Harbican v. Feidler dated about October 25, 1910." The appellant drew a line through this, wrote in its stead, "Accepted only as part payment of atty fees in case of Harbican v. Feidler," cashed the check, and wrote to the respondent quoting the disputed clause in the writing claimed by him to be the contract and stating:

"I will give you credit on account for $50 as per your check of 21st inst, and also $6 balance due on account of money advanced as costs and not used, making a total credit

to you in the sum of $56 and leaving a balance due me as per the terms of our agreement of $973.89."

The respondent contends that the retention and cashing of this check constituted an accord and satisfaction and that the jury should have been so instructed. This contention cannot be sustained. While a valid contract might have been made between the parties here as attorney and client for more than the amount exacted from the mortgagor as an attorney's fee, no valid contract could have been made which contemplated less. Since the act of 1895 (Laws of 1895, p. 81; Rem. & Bal. Code, § 475), the amount of the attorney's fee which may be collected from a mortgagee is no longer the subject of binding stipulation in the mortgage or note, though prior to that time it was. Since that act, a reasonable fee only can be exacted in any event, and manifestly no sum larger than that received by the attorney would be a reasonable fee. Any other construction of that statute would allow the attorney's fee collected from the mortgagor to be made a cloak for usury. In any event, therefore, the respondent having collected $300 as an attorney's fee, was estopped to claim it or any part of it as his own. There could, hence, be no *bona fide* dispute that that sum at least was due to the appellant. The rule that where a claim is in dispute and the debtor sends a check to the creditor for a less sum, indorsed as payment in full of the claim, the retention of the check by the creditor constitutes an accord and satisfaction, has no application to the case here presented. That rule only applies where the claim is disputed in good faith, and only as to the part of the claim so disputed. This case falls directly within the rule announced in *Seattle, Renton & Southern R. Co. v. Seattle-Tacoma Power Co.*, 63 Wash. 639, 116 Pac. 289. In that case the $1,000 minimum charge for electrical current each month was admittedly due. The retention of that sum, though claimed as a payment in full, could not constitute an accord and satisfaction. Up to that amount, there could be no *bona fide* dispute. The

following from our opinion in that case (page 645) makes the distinction plain:

"Neither could it be an accord and satisfaction, because the power company had an absolute right to receive this sum each month from the railway company. It may or may not have been entitled to more, but its absolute right to this sum was disputed by no one. Appellant's letter of November 28, 1906, is a clear recognition of this situation, when it says, 'It has been decided by the company to stand by the offer made by me of paying the amount designated in our contract as the minimum amount, namely $1,000 per month.' An offer to pay the confessed minimum amount due can hardly be construed into a payment of the maximum amount due, nor as a payment in settlement of the whole controversy."

The same is true here. The respondent having collected from the mortgagor $300 as an attorney's fee, could not dispute the attorney's right to that amount. Up to that amount, the claim was thenceforth liquidated and indisputable. The acceptance thereafter of a less sum by the attorney could not form the basis of or operate as a consideration for an accord and satisfaction.

It would be an idle thing to send this cause back for a new trial when, as we have seen, the admitted facts have established appellant's right, as a matter of law, to a judgment for a balance of $244. The judgment is reversed and the cause is remanded with direction to permit an amendment of the complaint to conform to the facts and enter judgment for the appellant in that sum.

MOUNT, C. J., FULLERTON, MORRIS, and CROW, JJ., concur.