[No. 25464. *En Banc.* March 28, 1935.]

CARL CLUBB, *Respondent,* v. THE SENTINEL LIFE INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 42 P. (2d) 792.

*George F. Hannan* and *John H. Dunbar,* for appellant.

*Vanderveer & Bassett* and *John Geisness,* for respondent.

HOLCOMB, J.—Respondent had judgment in the court below upon the verdict of a jury in the full amount sued for, of $1,245, for permanent total disability benefits alleged to be due respondent. Appellant admitted that it owed respondent $394.28, which it tendered into court.

On April 4, 1929, a policy of accident insurance was issued to respondent, in which policy it was stated that his occupation was license inspector and his duties were "Inspector, office and traveling duties only." The policy was kept in force until January or February, 1932, when respondent lost his employment as license inspector for the state, since which time he had taken up no new occupation. On November 16, 1932, respondent was struck by an automobile, and has since suffered a partial paralysis on the left side of his body which, according to the evidence, not only interferes with the movement of the left arm and leg, but prevents him from assuming any mental responsibility or doing any sustained work.

The material parts of the policy are these:

"Or if such injuries shall within ninety days from date of accident wholly and continuously disable the insured from performing any and every kind of duty pertaining to his occupation, for the period of one day or more, so long as the insured lives and suffers such continuous total disability, the company will pay him the weekly accident indemnity specified.

"Or if such injuries shall within ninety days from the date of the accident or immediately following a period of total disability, continuously disable the insured from performing one or more important daily

duties pertaining to his occupation or for total disability beginning more than ninety days from the date of the accident causing the disability, the company will pay for the period of such disability or disabilities, but not exceeding twenty-six consecutive weeks, one-half of the weekly accident indemnity specified.

. . . . . . . . . . . . . . . . . . . . . . .

Provided no claim shall be made for surgical benefits under the schedule of operations, if the insured on account of such injuries for which weekly indemnity is payable shall enter a public licensed hospital and be continuously confined therein solely on account of said injury, weekly indemnity otherwise payable for the period of such confinement, but not exceeding twelve consecutive weeks for any one such injury, will be increased fifty per cent.

. . . . . . . . . . . . . . . . . . . . . . .

"1. This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the company's classification of risks and premium rates in the event that the insured is injured after having changed his occupation to one classified by the company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the company for such more hazardous occupation."

After his injury, appellant had information that he had ceased to be a license inspector and was doing other work classified by its schedule as more hazardous work. This resulted in a dispute between respondent and appellant, which was later settled by respondent agreeing to accept weekly total disability benefits of twenty dollars and by accepting a rebate on the premiums from June 30, 1932. This settlement was evi-

denced by a rider attached to the policy signed both by the company and respondent, which reads:

"ENDORSEMENT

"In consideration of a reduction of $5.00 in the weekly benefits extended under the policy of which this endorsement is a part, it is understood and agreed that coverage extended by the policy is reduced to the following:

 Principal Sum ...................$5,000.00
 Weekly Accident Benefits .........  20.00

"The premium applying to this policy is accordingly reduced to $21.50 per year or $5.38 quarterly.

"Accepted Carl Clubb Date Mar. 15, 1933.

"Attached to and forming a part of Policy No. A-117279 issued by SENTINEL LIFE INSURANCE COMPANY to Carl Clubb of Olympia, Washington.

"Date effective June 30, 1932.

Countersigned   F. T. Harvey, President."
 M. F. Lindsay (G. R.)
  Registrar.

Thereafter, inasmuch as whatever rights respondent had were fully matured, he did not pay further premium. Appellant paid respondent weekly indemnity at the rate of twenty dollars per week until August 31, 1933. In October, 1933, having caused respondent to be examined by its physician, who reported that respondent was no longer totally disabled but only partially disabled, appellant then offered to pay respondent partial disability benefits commencing October 15, 1933, which were refused and this suit by respondent followed.

The sum of $394.28 tendered into court by appellant includes total disability benefits at twenty dollars per week from August 31, 1933, the date of its last payment, to October 15, 1933, and partial disability benefits at the rate of ten dollars for six months thereafter. Respondent sued for the full indemnity of twenty-five dollars per week from the beginning of his disability

to the date of trial, for which the jury awarded a verdict, and judgment was entered thereon by the trial court. Eight hundred and eighty dollars had theretofore been paid to respondent and credited by him.

In one of its affirmative defenses, appellant alleged that a dispute existed as to the extent of respondent's disability, and that the settlement was made in accordance with the instrument above set out. Respondent in his reply simply denies each and every allegation contained in the affirmative defenses.

It is to be noted that the policy in this case differs from that before us in *Storwick v. Reliance Life Insurance Co.,* 151 Wash. 153, 275 Pac. 550. The decision in that case can therefore be of little help in deciding this case, so far as determining the terms of the policy are concerned. The policy in this case did, however, state that the occupation of respondent was that of a license inspector and stated his duties.

A statement as to occupation refers to the time when made, and is not an admission that the same occupation was that of insured at the time of a later accident, nor a warranty that insured will continue in that occupation or will not engage in any other occupation. 4 Couch on Insurance, 892. *Elmore v. Southern Surety Co.,* 207 Iowa 872, 224 N. W. 32; *United States Fidelity & Guaranty Co. v. McCarthy,* 50 Fed. (2d) 2. Consequently, there was a question of fact for a jury to determine, whether or not respondent was prevented from following the particular business or occupation of the insured, even though he might be able to perform, to some extent, some other business or occupation. *Elmore v. Southern Surety Co., supra.*

There was a conflict between the expert witnesses as to what the degree of disability of respondent was, which was also a question for a jury, under proper submission, to determine.

Appellant at proper times moved for a new trial and for judgment notwithstanding the verdict, the last of which is the only error we find necessary to discuss.

■ Respondent asserts that the purported settlement was void, and that the trial court did not err in refusing to rule that he was bound thereby as a matter of law. Respondent also asserts that, as a matter of fact, there was no actual dispute; that there was no consideration therefor, and that he was simply compelled to accept the reduced amount because of the pressure of his financial needs.

No issue of overreaching, fraud or mistake was tendered in the pleadings of respondent, nor was there any testimony admitted to support such a contention. Respondent testified on cross-examination that the settlement agreement about the policy was signed in the presence of his then attorney, naming him, who is known to the court to be a competent and reliable attorney.

"The law favors an amicable settlement of claims of this character, and when such a settlement appears to have been fairly made, and has not been secured by fraud, false representations or overreaching, it must be sustained. [Citing cases]

"To avoid a settlement on the ground of fraud, requires clear and convincing proof." *Nath v. Oregon Railroad & Navigation Co.,* 72 Wash. 664, 131 Pac. 251.

One similar circumstance in this case to the above cited case is that, for several months, respondent retained the payments made to him under the settlement without questioning them. Had he been misled or defrauded, as now contended, he should have discovered that fact prior to the commencement of this action.

"This court has been very liberal in permitting settlements of claims for damages for personal injuries to be avoided when improperly or fraudulently

obtained." *Garver v. Great Northern Railway Co.,* 56 Wash. 519, 106 Pac. 192.

Although respondent has testified previously that he was somewhat excited at the time the settlement paper was signed, there is no intimation that his mind was not clear; and besides, he was also represented by a competent attorney, then present.

Whether mistakenly or not, appellant contended that it had the right to reduce the weekly benefits, and began negotiations therefor through an agent named Carson. Respondent testified that Carson began negotiations with him, which were finally consummated in the settlement agreement. Respondent testified to the dispute between them as "a dispute" over whether or not respondent had been employed in some other occupation than that of license inspector, which respondent emphatically denied. The agent of appellant desired to make the weekly payments less, but respondent nowhere testified that he was overreached or that there was any fraud, duress or compulsion in the matter of accepting the reduction in the weekly benefit. It is immaterial that the premiums were reduced rather than increased by the settlement agreement, if the settlement was, in fact, freely and voluntarily made.

Respondent cites and relies upon *Strandell v. Strand,* 82 Wash. 59, 143 Pac. 442, which is wholly unlike this case. In that case, there was a personal judgment for a certain large sum, which the judgment debtor attempted to satisfy by paying a first installment of interest that had been allowed in the original judgment. There was no bona fide dispute as to the amount due. Manifestly, there was no consideration for the pretended compromise in that case.

In addition to the principles applied in *Nath v. Oregon Railroad & Navigation Co., supra,* and *Garver v.*

*Great Northern Railway Co., supra,* the instant case is very like the case of *Pederson v. Tacoma,* 86 Wash. 164, 149 Pac. 643. In that case, a claim for $108,000 was settled and compromised, by a written stipulation, for $61,342.79. Among other things, we there said:

"Where a claim is in dispute, the parties may agree upon an amount to be paid, which amount when paid will constitute an accord and satisfaction. The rule is well stated in 1 C. J. p. 551, § 71, as follows:

" 'Where a claim is unliquidated or in dispute, payment and acceptance of a less sum than claimed, in satisfaction, operates as an accord and satisfaction, in the absence of fraud, artifice, mistake, or imposition, as the rule that the receiving of a part of the debt due, under an agreement that the same shall be in full satisfaction, is no bar to an action to recover the balance, does not apply, where plaintiff's claim is disputed or unliquidated. Under these circumstances there is a sufficient consideration for the settlement. The fact that the creditor was not legally bound to make any abatement of his claim, or that the amount accepted was much less than the creditor was entitled to receive and would have recovered had he brought action, or that he was induced to accept a part of his claim, by fear that he would lose the whole of it, does not in any way affect the operation of the rule, and it is of no importance which of the parties was right in his contention, or·that in fact they were both wrong.' "

As in the last quoted case, here there was a dispute. There was no fraud, artifice, mistake or imposition. Under those circumstances, there is sufficient consideration for the settlement. The fact that the creditor was not legally bound to make any abatement of his claim, or that the amount accepted was much less than the creditor was entitled to receive and would have recovered had he brought action, does not in any way affect the operation of the rule; and it is of no importance which of the parties was right in the contention, or that, in fact, they were both wrong. See,

also, *Maynard v. First Bank of Colton,* 56 Wash. 486, 106 Pac. 182.

By the terms of the policy, the amount originally payable for total, not partial, disability was twenty-five dollars per week "so long as the insured lives and suffers such continuous total disability." By the agreement and settlement, that amount was reduced to twenty dollars per week. Under the terms of the policy, also, the amount payable for partial disability, following the period of total disability, was fixed at one-half of the amount prescribed for total disability, to continue for a period of not to exceed twenty-six weeks.

The amount tendered by appellant into court was therefore sufficient.

The only errors we find meritorious are comprehended in the manner of submission to the jury.

For the foregoing reasons, we are forced to the conclusion that the trial court erred in denying appellant's motion for judgment n. o. v. and entering judgment for the full amount prayed for by respondent. The judgment will therefore be reversed, and remanded with instructions to enter judgment for respondent for the amount of the tender of $394.28.

Appellant will recover costs of trial and appeal.

MILLARD, C. J., STEINERT, GERAGHTY, MAIN, and MITCHELL, JJ., concur.

BEALS, J., dissents.

BLAKE, J. (dissenting)—The effect of this decision is simply this: That an insurance company, by welshing on its plain obligation, can create a dispute or controversy which will be a sufficient consideration for an agreement with the insured to settle for an amount less than that agreed to be paid under the policy.

Respondent had paid all premiums due under the policy up to the time of his injury. His rights under

the policy had then accrued. He was entitled to the benefits agreed upon in the policy, unless he had become engaged in a more hazardous occupation than that of license inspector. Appellant, however, refused to pay as it agreed under the terms of the policy. Four months after respondent was injured, it presented to him the agreement set out in the majority opinion. For some unexplained reason, that agreement was dated June 30, 1932—more than four months prior to the time respondent was injured. It was not contended, however, that any settlement was suggested or made until March, 1933.

The applicable rule has been stated by this court in *Sanford v. Royal Ins. Co.*, 11 Wash. 653, 40 Pac. 609, the syllabus of which reads as follows:

"Where the relation of debtor and creditor exists between an insurance company and the assured, by reason of the fact that the amount of loss under a policy of insurance had been adjusted and determined and there is no bona fide ground of dispute concerning the company's liability, the release by the assured of the whole claim in consideration of payment of part is not based upon sufficient consideration and the assured may maintain an action for the whole amount due."

Recognizing the necessity of a consideration to sustain the alleged settlement, appellant set up the following facts in an affirmative defense:

"That at the time of plaintiff's accident he was not engaged in the occupation of inspector, nor was he employed by the State of Washington, but at said time, in so far as he had any occupation, he was repairing automobiles and engaged in building operations; that each of said occupations is classified by the Company as more hazardous than that stated in the policy; that upon receiving this information the defendant company endeavored to classify the plaintiff as entitled to indemnity under the classification of said business, which he refused to do, and this resulted in a written settlement between plaintiff and defendant under date

of June 30, 1932, in words and figures as follows, to-wit: . . ."

Then follows the agreement set out in the majority opinion. There was not a scintilla of evidence offered by appellant in support of these allegations. It rested this phase of the case solely on the so-called settlement agreement. The record is bare of any evidence to support a *bona fide* claim on the part of appellant that respondent had engaged in either of the occupations referred to in the affirmative defense. There is, in fact, no evidence of any dispute on the subject. We have only respondent's version of what occurred between him and appellant's agent when the so-called settlement was made. In effect, respondent was then told he would have to take what he could get. And he did not get that until he brought this action.

TOLMAN, J., concurs with BLAKE, J.