[No. 26340. *En Banc.* March 29, 1937.]

GRANDVIEW INLAND FRUIT COMPANY, *Appellant*, v.
HARTFORD FIRE INSURANCE COMPANY, *Respondent.*[1]

[1]Reported in 66 P. (2d) 827.

*Cheney & Hutcheson* and *Walter J. Robinson, Jr.,* for appellant.

*Clarke & Clarke,* for respondent.

MILLARD, J.—A fire insurance policy was issued by defendant on June 18, 1934, in the amount of ten thousand dollars upon a one and one-half story frame and brick warehouse, owned and operated by the plaintiff. The warehouse, which consisted of the main floor and basement, was one hundred feet long by fifty feet wide.

On May 22, 1935, the building was destroyed by fire. Plaintiff held three policies of fire insurance, including the one described above, in defendant company, covering property in Grandview. The defendant's adjuster claimed that the loss was partial and amounted to $8,114. The plaintiff insisted that the building was totally destroyed, and that it was entitled to receive ten thousand dollars by virtue of the valued policy statute, Rem. Rev. Stat., §§ 7150 and 7151 [P. C. §§ 3012, 3013], reading as follows:

"Sec. 7150. Every insurer who makes insurance upon any building or property or interest therein against loss or damage by fire, and every agent who issues a fire insurance policy covering on any building or property or interest therein, and every insured who procures a policy of fire insurance upon any building or property or interest therein owned by him, is presumed to know the insurable value of such building or property or interest therein at the time such insurance is effected. Any insurer who knowingly makes insurance on any building or property or interest therein against loss or damage by fire in excess of the insurable value thereof, shall be fined in a sum

not less than fifty dollars nor more than one hundred dollars. Any agent who knowingly effects insurance on a building or property or interest therein in excess of the insurable value thereof, shall be fined in a sum not less than fifteen nor more than twenty-five dollars. Any person or party who knowingly procures insurance against loss or damage by fire on any building or property or interest therein owned by him in excess of its insurable value shall be fined in a sum not less than twenty-five dollars nor more than one hundred dollars.''

''Sec. 7151. Whenever any policy of insurance shall be hereafter written or renewed insuring real property or any building or structure erected thereon or connected therewith, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured, or his assigns, the amount of insurance written in such policy shall be taken conclusively to be the true value of the property when insured, and the true amount of the loss and measure of damages when destroyed. In case there is a partial destruction of the property insured, no greater amount shall be collected than the injury sustained: Provided, that the insurer shall have the option to repair, rebuild or replace the property lost or damaged with other of like kind and quality if he gives notice of his intention so to do within twenty days after the receipt of notice of loss: Provided, such insurer shall, within thirty days from the receipt of notice above, commence such rebuilding or replacing and shall diligently prosecute the same to completion, and shall pay to the insured the reasonable rental value of the premises with the buildings thereon from the date of loss to the date of such completion.''

The offer of $8,114 was increased to $8,500, and finally to $9,000. It was understood by plaintiff that, unless it accepted the $9,000 settlement upon the building policy, the defendant would not pay upon any of the three policies and it would be necessary for plaintiff to institute an action for collection of

same. During these negotiations, the plaintiff consulted with, and was fully advised by, the same attorneys who represent it in the prosecution of this appeal. Proofs of loss were prepared under all three policies and taken by the insured to its attorneys for their approval. The agreement compromising the claim for loss of the building in question reads as follows:

"The insured agrees to accept the sum of $9,000 in full compromise settlement of the claim under policy No. 6655 of the Hartford Fire Insurance Company of Hartford, Connecticut for loss by fire of May 22, 1935, in consideration of the Company's agreement not to litigate the claim, and the Company's waiver of their option to rebuild.

"The undersigned insured hereby claims of the Hartford Fire Insurance Company of Hartford, Connecticut, under the above mentioned policy in compromise, the sum of $9,000."

The proofs were delivered to defendant's adjuster and drafts were issued and delivered to the plaintiff. A separate draft was drawn for the amount of the loss under each policy of insurance. All of the drafts were indorsed and cashed by the insured. The draft under the policy in suit contains the following language upon the back thereof and immediately above the written indorsement of plaintiff:

"Endorsement of this draft hereby acknowledges receipt of full payment, being in full satisfaction by compromise settlement of all claims and demands against said company for loss and damage under the policy of insurance as set forth on the face of this draft. In consideration whereof, the said policy is hereby

"POLICY CANCELLED AND SURRENDERED."

After acceptance of settlement with full knowledge as to all of the facts and being fully advised as to its legal rights with reference thereto by its own at-

torneys, plaintiff instituted this action to recover an additional one thousand dollars over and above the sum it had originally accepted as the amount of its loss.

The cause was tried to the court, which was of the view that the assertion that there was a partial loss only was made in good faith by the defendant. The findings of fact, so far as pertinent, read as follows:

"III.

"That on or about the 23rd day of May, 1935, said insured building was damaged by fire but that a valuable portion of the cement walls around the basement thereof remained undestroyed and a bona fide dispute arose between the plaintiff and the defendant as to whether or not said building had suffered a total loss as contemplated by Section 7151 of Remington's Revised Statutes of the State of Washington, plaintiff contending that the loss was total and that it was entitled to recover $10,000, the full face of the policy, and the defendant contending that the loss was not total and that plaintiff's recovery should be restricted to the actual damage done to the building, to-wit, the sum of $8114.74.

"IV.

"That the parties entered into a compromise settlement of their dispute by an agreement upon the part of the defendant to pay and the plaintiff to accept the sum of $9,000 in full satisfaction of the claim for loss under said policy No. 6655, and that in accordance with said settlement agreement plaintiff executed proofs of loss in the agreed amount of $9,000 and that the defendant thereafter promptly issued and delivered its draft in said sum payable to the plaintiff and to A. M. Garrison and R. D. Inman, the principal stockholders thereof, which said draft contained, among other things, the following wording:

" 'Endorsement of this draft hereby acknowledges receipt of full payment, being in full satisfaction by compromise settlement of all claims and demands against said company for loss and damage under the

policy of insurance as set forth on the face of this
draft. In consideration whereof the said policy is
hereby—policy cancelled and surrendered.'

"That said draft was duly endorsed by the plain-
tiff and its two said stockholders and that plaintiff
was paid the sum of $9,000 thereunder in full accord
and satisfaction of its claim for loss under policy No.
6655 and that said policy was surrendered to the de-
fendant company."

Concluding that the nine thousand dollars accepted
by plaintiff prior to the institution of this action con-
stituted a full accord and satisfaction of any and all
claims for loss and damage under the insurance pol-
icy issued to the plaintiff, the trial court entered a
judgment of dismissal, from which plaintiff has ap-
pealed.

Appellant contends that the loss was total and that,
under the valued policy statute, the compromise and
settlement does not preclude recovery for the unpaid
deficiency, as there was not a valid accord and satis-
faction.

▆▆ The first question presented is whether the
loss was total.

As a result of the fire, nothing remained of the
building above the ground. The wooden floor of the
basement was destroyed by the fire. The basement
was filled with a large amount of debris. Most of
the concrete walls of the basement fell into the base-
ment as the result of the fire or were weakened and
bulged inward. All that remained after the fire were
a part of the foundation and the cellar. There was
testimony that the original total replacement cost of
the concrete foundation was $1,178.55. The witness
who testified as to this was one of respondent's ad-
justers. He figured that sixty per cent of the founda-
tion could be used, therefore the value remaining of
the building which was shown by the adjuster to be

$11,897.17, was $707.13. In other words, all that remained of the building was less than seven per cent of its value. From the $707.13 should be deducted the cost of repairs and removal of the debris, which makes the actual value of the salvage remaining approximately four hundred dollars.

Until the time of the compromise of the claim, respondent's adjuster assumed the position that the value of the salvage was approximately four hundred dollars in excess of the cost of the removal of the debris. At the time of the compromise, the adjuster reduced his figure concerning the value of the concrete foundation of $200.35. He testified that the reduction of this figure was made by him in an effort to compromise the claim, as the appellant would not admit the concrete was worth four hundred dollars, nor would the appellant suggest any amount as the value of the concrete.

It is clear from the evidence that there was a total destruction of the building and that nothing remained of the structure insured except ashes, rubbish and a few weakened portions of the concrete walls of the basement. The structure had lost its specific character and ceased to exist as a building.

In *Lindner v. St. Paul Fire & Marine Ins. Co.*, 93 Wis. 526, 67 N. W. 1125, the stone foundation, the foundation sills and the first floor of the insured house were practically intact and uninjured, and had not been reduced to a broken and shapeless mass, but still retained their distinct character, uninjured, as parts of the building. In holding that the question of total destruction was one for the jury in that case, the court said:

"This evidence will not prevent the case from being regarded as one of total destruction of the building. It would not be expected that the foundation and cel-

lar would be utterly destroyed. McClure does not say that the foundation was not injured; and only portions of certain combustible parts of the building remained. As was said in *Seyk v. Millers' Nat. Ins. Co.* 74 Wis. 72: 'It cannot be doubted that the identity and specific character of the insured buildings were destroyed by the fire, although there was not an absolute extinction of all the parts thereof. This was an entire destruction of the buildings, within the meaning of the statute.' The material facts were undisputed, and the court might properly give, as it did, an absolute instruction on the subject. Wood, Fire Ins. § 107; *Harriman v. Queen Ins. Co.* 49 Wis. 71. Another of defendant's witnesses testified that after the fire he made a measurement of the size of the buildings, and that he was able to determine their ground size from what was left; that he found a *part* of the sills and some posts, and where the sills were gone, he had no trouble in following their outline. It is clear that each of the buildings had lost its identity as such, so that after the fire neither of them existed as a building. The fact that some of the materials remained, in a more or less injured condition, will not prevent the loss from being total. 2 May, Ins. § 421*a*.''

The facts bring the case at bar within the rule announced in 6 Cooley's Briefs on Insurance (2d ed.), pp. 5026 and 5028, to the effect that there is a total loss if the building is so far destroyed that no substantial part or portion of it remains in place capable of being utilized to advantage in restoring the building to the condition in which it was before the fire.

In *Eck v. Netherlands Ins. Co.*, 203 Wis. 515, 234 N. W. 718, the roof of the building in question was destroyed, but one could, if care were exercised, walk upon the flooring of the second floor. It was estimated that about fifteen per cent of the building remained, such estimate being based upon the usable materials remaining. While the east gable and front wall and front porch were badly burned, the original outlines

of the building remained. That was held to be a total loss.

In *O'Keefe v. Liverpool, L. & G. Ins. Co.,* 140 Mo. 558, 41 S. W. 922, 39 L. R. A. 819, the court held that there was a total loss of the building, although the foundations and walls (the latter were warped) of the building remained.

See, also, *Palatine Ins. Co. v. Weiss,* 109 Ky. 464, 59 S. W. 509; *Thuringia Ins. Co. v. Malott,* 111 Ky. 917, 64 S. W. 991, 55 L. R. A. 277; *Hinkle v. North River Ins. Co.,* 70 W. Va. 681, 75 S. E. 54; *Williams v. Hartford Ins. Co.,* 54 Cal. 442, 35 Am. Rep. 77; *Laurenzi v. Atlas Ins. Co.,* 131 Tenn. 644, 176 S. W. 1022.

The language, as follows, in *Pennsylvania Fire Ins. Co. v. Drackett,* 63 Ohio St. 41, 57 N. E. 962, 81 Am. St. 608, respecting the question of total loss, is applicable in the case at bar:

"It has, however, received the consideration of the courts of other states, having statutes similar to our own, and whilst there is some difference in modes of expression, there seems to be no substantial difference of opinion. It seems to be agreed that it is not necessary to constitute a total loss, that all the material composing the building should be destroyed; it is sufficient, though some parts of it remain standing, that the building has lost its identity and specific character as a building, the insurance not being upon the material composing the building but upon the building as such. When the loss by fire is such that its character as a building is destroyed, and it remains simply as a mass of ruins, parts of which may remain standing, but of no value in repairing or rebuilding the structure, though something might be realized for the material by removing it, the loss is regarded as total. Thus in Joyce on Insurance, section 3025, it is said 'In case of an insurance upon a building under a fire risk, the first principle is, that it is the building, and not the materials of which it is composed, that is cov-

ered, and therefore total loss does not mean necessarily an absolute extinction of every part and parcel of the property. In such risk there is a total destruction and loss when, by the peril of fire, the building becomes a mass of ruins and rubbish, and loses its specific character, and ceased to be a building, becomes unfit for use as such, without regard to the fact that even some parts may be left entire, or that a large portion of the building be left standing and not actually destroyed.' . . .

"'The general charge was quite liberal to the defendant, more so probably than it should' have been. The court said to the jury: 'There can be no total loss so long as a remnant of the structure standing, the stone foundation being disregarded, is reasonably adapted for use as a basis upon which to restore the building to substantially the condition in which it was before the injury by fire. . . .

" '4. A policy of insurance is upon the building as such and not upon the materials of which it is composed. If you find that the identity and specific character of the insured building was entirely destroyed by fire, then you must find for the plaintiff.'

" '7. Although you may find that after the fire a large portion of the four walls were left standing, and that certain parts of the building were left untouched by the fire, still if you find that the building has lost its identity and specific character, you may find that the building was totally destroyed.'

"These charges state in a general form what seems to be the received law applicable to the case. . . . "

Counsel for respondent insist that the settlement between the parties precludes recovery. Counsel for appellant counter that, under the circumstances of this cause, this is not true, as there was no valid accord and satisfaction. It is insisted that, under the provisions of the valued policy statute, Rem. Rev. Stat., §§ 7150 and 7151 [P. C. §§ 3012, 3013], whenever an insured building is totally destroyed, the amount of insurance written in the policy is conclusive as to

the amount of the loss, therefore there was no consideration whatever for compromise for less than the face of the policy.

In *Sanford v. Royal Ins. Co.*, 11 Wash. 653, 40 Pac. 609, a release of a claim for $2,500 under a fire insurance policy was procured upon payment of $119.75 by falsely representing that the policy was void. In that case, it was not disputed but that the property was totally destroyed. The controversy or dispute between the insurer and the insured at the time of the release of the claim for less than the face of the policy was as to the liability of the insurer under the policy. The trial court held that the plaintiff was entitled to recover despite the compromise for less than the face of the policy, and in affirming that judgment, we said:

"Nor do we think that there was any consideration supporting such release and surrender. . . . .

"As already noticed, the amount of the loss had been determined and agreed upon prior to the time of obtaining such release. Hence, at that time the appellant was actually indebted in the amount of the loss so determined, or it was not indebted in any sum whatever. In other words, the policy was absolutely valid, and appellant's obligation to pay the amount of the loss as determined by the adjustment was complete at the time of the pretended settlement, or it was invalid and imposed no obligation whatever. If invalid, it was only so because of the fraudulent representations or concealment of the assured concerning incendiarism. The invalidity of the policy was not assailed or asserted for any other reason. Now, as we have seen, it was not invalid for that reason; so that it manifestly appears that at the time when the appellant's adjuster procured from the respondent's assignors the release and surrender in question, the relation of debtor and creditor absolutely existed between the company and the assured. The demand was neither an unliquidated demand nor could the right to

recover be considered doubtful. The adjustment had been completed and the amount that was payable had been ascertained. . . .

"It follows from what has been said that at the time when this policy was surrendered and the release executed, the assured were entitled to payment from the company of the amount of the loss. Their right to so recover was not a doubtful right. The amount which they were entitled to recover was not uncertain. The liability to make payment of such amount had become fixed; and as the sole consideration for the release and surrender of the policy which thus entitled them to this large sum of money, appellant paid in cash and by note (its equivalent) $119.75, a fractional part only of what it was actually owing.

" 'The rule is well established that where the facts show clearly a certain sum to be due from one person to another, a release of the entire sum upon payment of a part is without consideration, and the creditor may still sue and recover the residue. If there be a *bona fide* dispute as to the amount due, such dispute may be the subject of a compromise and payment of a certain sum as a satisfaction of the entire claim, but where the larger sum is admitted to be due, *or the circumstances of the case show that there was no good reason to doubt that it was due, the release of the whole upon payment of part will not be considered as a compromise, but will be treated as without consideration and void.' Fire Insurance Association v. Wickham,* 141 U. S. 564 (12 Sup. Ct. 84).

"A wrongful assertion of a claim is no ground for compromise. *Mulholland v. Bartlett,* 74 Ill. 58."

In *Fire Ins. Ass'n v. Wickham,* 141 U. S. 564, 12 S. Ct. 84, a fire insurance claim was settled for less than the amount of the policy. In affirming the judgment for the recovery of the balance, the United States supreme court said:

". . . if the plaintiffs were induced to settle their claims for one-half the amount that was due them, and there was no consideration for the relinquishment of

the other half, this suit will lie for the recovery of the amount.''

In *Seattle, R. & S. R. Co. v. Seattle-Tacoma Power Co.,* 63 Wash. 639, 116 Pac. 289, we said:

''Since, then, it was conceded by the railway company that there was no dispute as to $1,000 being due each month, and that this amount was dependent upon no condition or contingency ever in dispute between the parties, how can the doing of that which, by every conception of the contract, it was bound to do, operate as a discharge from doing something further, which was the only dispute between them? In paying this monthly amount, the railway company paid nothing further than its confessed obligation, which was not by way of compromise of its disputed obligation; leaving, as clearly indicated in its letters, notwithstanding its notation of full payment, an assumption that something more might be due, which it was ready to determine in a friendly adjustment, or await the decision of the court upon the disputed claims.

''Neither could it be an accord and satisfaction, because the power company had an absolute right to receive this sum each month from the railway company. It may or may not have been entitled to more, but its absolute right to this sum was disputed by no one. Appellant's letter of November 28, 1906, is a clear recognition of this situation, when it says, 'it has been decided by the company to stand by the offer made by me of paying the amount designated in our contract as the minimum amount, namely $1,000 per month.' An offer to pay the confessed minimum amount due can hardly be construed into a payment of the maximum amount due, nor as a payment in settlement of the whole controversy.''

In *Columbia River Door Co. v. Springfield Fire & Marine Ins. Co.,* 159 Wash. 178, 292 Pac. 409, we held there was no accord and satisfaction of the amount due on oral insurance, through a settlement, where no defense was asserted in good faith and no disputed question of liability compromised. We said:

"The adjusters seem to have agreed that there was a total loss under the written policies aggregating $157,000, but, without claiming or suggesting any legal or moral defense, they informed respondent that the loss would not be voluntarily paid, unless respondent consented to deduct $2,500 from the total of the $157,000, representing that, if that deduction was not made, they would force respondent to litigate the matter, and that the cost to respondent of such litigation would greatly exceed the amount of the deduction which they demanded. To this deduction, respondent finally agreed, and, thereupon, the adjusters prepared proofs of loss upon each separate written policy, which were presented to and signed on behalf of respondent without examination as to their contents, upon the belief that it would receive $154,500 in settlement of the loss under the written policies, instead of $157,000.

"Payment was made accordingly, and the appellant, instead of paying $5,000 on its previously issued written policy, deducted its pro rata of the $2,500 rebate and paid to the respondent $4,929.38, receiving from it a receipt from which we quote:

" '$4,929.38, which payment evidenced by proper indorsement hereof constitutes full satisfaction of all claims and demands for loss and damage which occurred on the 11th day of July, 1926, to property described in policy No. 696072 issued at the Vancouver, Washington, Agency . . .'

"From these facts, it will be seen that the jury was authorized to find that the respondent, by the delivery of the binder to the adjusters, along with the written policies of insurance, asserted its claim for the loss thereunder; that it was not aware that the amount thereof was not listed as a part of the total insurance in the proofs of loss; that, by signing the proofs of loss, no waiver of the oral insurance was intended, and that the appellant was not placed in a position where it had a right to assume that such a waiver was intended. Likewise, the jury was justified in finding that there was no denial of liability on the $5,000 written policy at or before the time that the $2,500 deduction was made, and that such deduction was made without any consideration moving to the respondent, and wholly

for the purpose of securing an early payment on an amount which was admittedly then justly due. . . .

"Nor can we say, as a matter of law, that there was an accord and satisfaction, because the fact does not appear undisputedly, or at all, that a defense in good faith was asserted to the $5,000 written policy, or to the oral contract, and that any disputed question of liability was compromised and settled. *Seattle, Renton & Southern R. Co. v. Seattle-Tacoma Power Co.*, 63 Wash. 639, 116 Pac. 289, *Thayer v. Harbican*, 70 Wash. 278, 126 Pac. 625. Of course, it does not appear that appellant was insolvent."

See, also, *Champagne v. McDonald*, 141 Wash. 617, 251 Pac. 874; *Rhodes v. Tacoma*, 97 Wash. 341, 166 Pac. 647; *Horn v. Atlas Assur. Soc.*, 241 Ky. 226, 43 S. W. (2d) 675.

█ Under the valued policy statute, Rem. Rev. Stat., §§ 7150 and 7151 [P. C. §§ 3012, 3013], as stated above, whenever an insured building is totally destroyed, the amount of insurance written in the policy shall be taken conclusively to be the amount of the loss. This statute is a part of the public policy of this state, which was not waived by the appellant in its agreement with the respondent to accept less than the face of the policy.

"The valued policy law is founded on what the legislature regarded as sound public policy, and was no doubt intended to relieve the insured from the burden of proving the value of his property after its total destruction, and to prevent insurance companies from receiving premiums on overvaluations and thereafter repudiating their contracts as soon as it becomes to their interest to do so." *Bright v. Hanover Fire Ins. Co.*, 48 Wash. 60, 92 Pac. 779.

The valued policy statute is grounded on public policy, and fixes conclusively the worth of the building, which is the subject of insurance, at the value written in the policy. When the building is totally destroyed, the damages are liquidated and the measure of recov-

ery then ascertained. The insurer can not, under facts such as obtain in the case at bar, by refusal to concede the total destruction of the building, create a controversy and thereby bring about a compromise for less than the face value of the policy.

As stated in *Horn v. Atlas Assur. Soc.*, 241 Ky. 226, 43 S. W. (2d) 675:

"The primary purpose of the enactment of these laws (for they are common to most, if not all, states) was to repress an evil practice of overvaluation in insurance on real property, to prevent the collection of excessive premiums, and then to claim an excessive appraisement after the property has been destroyed and incapable of valuation except by more or less speculation. It promotes justice, and is justified by considerations of public policy. The value stated is conclusive as to the extent of liability, in the absence of fraud or subsequent deterioration, which contingent factors are taken care of in the statute. The law closes the question of the minimum measure of value of property totally destroyed. It eliminates contention."

The purpose of statutes of the character of the valued policy statute would be defeated if their effect could be avoided by contract. While, generally, parties may waive their contractual or statutory rights by agreement to waive, yet an agreement to waive rights involving a question of public policy would be void. It would be contrary to the public policy of this state, declared by the valued policy statute, to enforce the compromise in the case at bar. There was not a valid accord and satisfaction. To deny a recovery to the appellant would, in effect, be a holding that one could bind himself by contract not to avail himself of a right which the law has allowed to him on grounds of public policy. While one may decline to take advantage of a privilege given to him by such a statute, he may not bind himself by or be held to a contract which denies

to him a right which the law has allowed to him on grounds of public policy.

Respondent relies upon *Markham Shingle Co. v. Royal Ins. Co.,* 106 Wash. 309, 179 Pac. 799, in which we held there was a complete accord and satisfaction where the insured, who was entitled, under the valued policy law, to the policy value of a building destroyed by fire, agreed with the adjuster to a lump sum as the total loss, including partially destroyed items and a less value on the building, which was in dispute, and made proofs of loss for such sum and accepted the same in full payment; and it is immaterial that he claimed that consent was given in ignorance of the statute. That case is distinguishable from the case at bar. In commenting on that case, the court of appeals of Ohio, in *Hamilton County Mut. Fire Ins. Co. v. Rosenbaum,* 34 Ohio App. 453, 171 N. E. 345, said:

"Counsel for the insurance company rely largely on the case of *Markham Shingle Co. v. Royal Ins. Co.,* 106 Wash. 309, 179 P., 799. In that case the court held that an accord and satisfaction was good even though the parties at the time were ignorant of a 'valued policy' statute. That case, however, does not assist in the determination of the case under consideration. The case concerned a partial loss and a dispute as to the extent of loss and damage. It was conceded, and so found by the court, that the loss was partial. There was no reason for the comment of the court in the opinion on the fact that parties are presumed to know the law. The Washington 'valued policy' statutes only applied when loss was total. The settlement was based on a disputed partial loss, and the decision was probably correct under the facts of the case.

"In the instant case the loss was total, and, the settlement being based on partial loss, there was a mutual mistake which voids the settlement, and Section 9583 protects the insured to the extent of the amount named on the policy."

Nor do we find *Gouin v. Northwestern Nat. Ins. Co.,* 145 Wash. 199, 259 Pac. 387, of comfort to respondent. The insurance contract in that case provided that the insurer would not be liable beyond the actual cash value of the property destroyed, and that in no event should it exceed what it would cost to replace the building with material of like kind and quality as that of which it was originally constructed. The contract further provided that, in the event of a dispute as to whether the loss was partial or total, the question would be submitted to appraisers. We held that the appraisers' award was fairly and honestly made, therefore it was binding upon the parties.

In *Goldstein v. National Fire Ins. Co.,* 106 Wash. 346, 180 Pac. 409, we sustained the validity of a policy provision for appraisement of property by arbitrators of property partially destroyed by fire. That case is distinguishable from the case at bar.

Respondent also relies upon *Clubb v. Sentinel Life Ins. Co.,* 181 Wash. 284, 42 P. (2d) 792. In that case, there was a good faith dispute between the parties in the matter of the insured having changed his occupation to one different from and more hazardous than the one he had at the time the policy was written. The dispute was as to the continuance of the occupation of the insured. He was represented by able counsel, and we held that the settlement by reduction of weekly payments could be avoided only on clear and convincing proof and would be sustained in view of the fact that there was a bona fide dispute as to continuance of the occupation of the insured.

The trial court refused to consider the concurrent settlement under the other two policies, and based the decision upon the ground that the compromise was supported by the consideration for the settlement of the

dispute as to the totality of the loss and the amount of damage under the policy in the suit.

The trial court sustained the position of the appellant that, in view of the fact that specific considerations were set out in the compromise agreement, as quoted above, the respondent was restricted to the considerations therein specified, and that the oral proof of other considerations would be violative of the parol evidence rule. The trial court was right. The consideration appears in the written contract as a contractual term thereof, and the obvious implication is that no other consideration exists. Parol evidence is not admissible to vary the contract by showing the existence of another and a different consideration.

In *Spokane Canal Co. v. Coffman*, 61 Wash. 357, 112 Pac. 383, we said:

"The rule is elementary that the terms of a written contract may not be varied or contradicted by parol. The rule is stated in *Bradley v. Harter*, 156 Ind. 499, 60 N. E. 139, as follows:

" 'It is true that the consideration for the sale of real estate, even as between the parties to the written contract, may be shown by parol, when such consideration is not of itself contractual within the terms or provisions of the written instrument; but when a written contract affected by the statute, stipulated, fixes, and provides for the payment of the consideration as was done under the written agreement in this case, the consideration, and the mode or manner of its payment, as therein fixed and provided, became a part of the contract, and the latter, as to these, is no more open to change or modification by parol than it is in respect to any other of its parts.'

"Under this rule, the trial court was right in rejecting oral evidence to thus modify and vary the terms of the admitted written contract."

In *Shannon v. Prall*, 115 Wash. 106, 196 Pac. 635, the appellant wife signed a writing individually and for her husband by herself, as follows:

" 'Received of J. W. Prall, through Joseph R. Roberson, the sum of Four Hundred Sixty-Six Dollars and Sixty-Five Cents ($466.65), said amount being balance in full due as shown on statement bearing even date herewith also received.

" 'As a further consideration of the delivery to us of two (2) certain promissory notes of Five Hundred Dollars each, one bearing date of October 29, 1913, due October 29, 1914, made by J. W. Shannon, in favor of J. W. Prall, and one bearing date November 20th, 1913, due November 20th, 1914, made by J. W. Shannon and Flora Shannon, in favor of J. W. Prall, we hereby acknowledge the receipt in full, and waive all demands of every kind and nature for further consideration up to this 19th day of March, A. D. 1919.

" 'Flora Shannon
" 'J. W. Shannon
" 'By Flora Shannon.' "

We said, Judge Main speaking for this court:

"The writing having been signed in such form that it would cover the individual rights of the appellant as well as the community rights of herself and husband, the question then arises as to whether the writing is a mere receipt and subject to be contradicted by oral testimony, or whether it is of a contractual nature and therefore subject to the rule that oral testimony is not permissible for the purpose of altering, varying, or adding to its terms. It is not always easy to determine whether a particular writing is a mere receipt, or whether it falls within the class of writings which are of a contractual nature. The line which divides the two kinds of writings has not been clearly defined and cases can be found which it is difficult to reconcile. In *Jackson v. Ely,* 57 Ohio St. 450, 49 N. E. 792, it is said:

" 'Whatever the general rule may be as to the reception of parol evidence to explain a mere receipt, it is not admissible, at least in Ohio, to vary the terms of a contract although the contract should be included in an instrument which was also a receipt for money or property. *Stone v. Vance,* 6 Ohio 246; *Bird v.*

*Hueston,* 10 Ohio St. 418, 421, 430. The line that divides receipts open to parol explanation from written contracts to which nothing can be added to or taken from by parol evidence, has not been satisfactorily established, and cases can be found, which it is extremely difficult, if not impossible, to reconcile.'

"The writing in question is first a receipt for a sum of money. This is embodied in the first paragraph. The second paragraph provides that, in consideration of the delivery to the appellant of the two notes described, 'we hereby acknowledge the receipt in full and waive all demands of any kind and nature for further consideration up to this 19th day of March, A. D. 1919.' It seems to us that this is more than a mere receipt. It is of a contractual nature by which, for the surrender of the notes, receipt in full is acknowledged and all demands of 'every kind and nature' are waived. The writing has more of a contractual nature than did the writing involved in *Allen v. Tacoma Mill Co.,* 18 Wash. 216, 51 Pac. 372.

"Even though the writing be construed as a release in the nature of a contract, the appellant nevertheless invokes the general rule that, where in a release there is a particular recital followed by general words, the general words will be qualified by the recital. A number of cases to this effect are cited, but the writing in question cannot be brought within that rule. It contains, as already indicated, two paragraphs which are respectively devoted to a different subject-matter, one a receipt for money, and the other a release of all demands based upon the consideration of the surrender of the two notes specified. There is not in the writing a particular recital followed by general words. If the general clause at the end of the second paragraph was appended to the first, it might be that the rule would be applicable. It was not, however, in consideration of the payment of the sum specified in the first paragraph that all demands were waived, but in consideration of the delivery of the notes as recited in the second paragraph. The writing being of a contractual nature, and not being subject to the rule that the general words are controlled by a particular recital, parol evidence is

not admissible for the purpose of adding to or varying its terms. . . ."

The rule enunciated in the foregoing opinion is applicable to the facts in the case at bar.

In *Holdridge v. Garretson,* 152 Wash. 226, 277 Pac. 982, Judge Main speaking for the court, we followed *Shannon v. Prall, supra,* and said:

"If it was a term or condition of the contract, then, upon the trial, the appellant could not introduce testimony to vary or modify its terms. In Page on the Law of Contracts, vol. 4, § 2166, it is said:

" 'If the consideration appears in the written contract as a contractual term thereof, an oral agreement whereby an additional or other consideration is provided for violates the parol evidence rule and is unenforceable. The fact that the consideration is set forth as a contractual term implies that no other consideration exists.' "

See, also, 22 C. J. 1169, § 1566; 22 C. J. 1171, § 1569.

The judgment is reversed, and the cause remanded with direction to the trial court to enter judgment in favor of the appellant in the amount for which it prays.

STEINERT, C. J., HOLCOMB, BEALS, BLAKE, GERAGHTY, and ROBINSON, JJ., concur.

TOLMAN, J. (dissenting)—In my judgment, this case cannot be distinguished from the case of *Markham Shingle Co. v. Royal Ins. Co.,* 106 Wash. 309, 179 Pac. 799; and since I am unwilling to overrule that case, I am disposed to affirm the judgment in this case.

MAIN, J., concurs with TOLMAN, J.