[No. 29703.   Department One.   July 8, 1946.]

TIMOTIO DISCARGAR, *Appellant*, v. THE CITY OF SEATTLE,
*Respondent.*[1]

*George F. Hannan* and *L. A. Michelson,* for appellant.

*A. C. Van Soelen* and *Arthur Schramm,* for respondent.

MILLARD, J.—This appeal is from a judgment entered upon
a verdict in favor of defendant, in an action to recover for
personal injuries sustained as the result of collision of a city
bus with plaintiff while he was opening a door of his parked
automobile.

[1] Reported in 171 P. (2d) 205.

The collision of respondent city's bus with appellant pedestrian occurred about noon January 25, 1944, in the city of Seattle on Fifth avenue south, about the middle of the block between Jackson and King streets, a few feet south of the projection of the traffic runway leading into the Depot Garage, appellant's intended destination.

The distance from Jackson street to King street is 248 feet. On the west side of Fifth avenue south, a distance of about four blocks, is a concrete wall; no buildings for business use are on that side of the avenue. This paved highway is fifty-five feet wide, with a white center line in the middle, hence each traffic lane—northbound and southbound—is twenty-seven and one-half feet wide. Vehicles are regularly parked paralleling the east side (northbound traffic lane) of Fifth avenue south, and usually occupy about seven feet of this highway west of the east curb. In other words, with cars thus parked at the east curb, there is a full space of not less than twenty feet to center line for vehicular traffic in northbound lane. The southbound traffic lane is twenty-seven and one-half feet wide from center line to west curb of that highway.

When the accident occurred, a large truck, which extended several additional feet beyond the ordinary lane of parked cars, was parked on the east side or northbound lane of Fifth avenue south immediately south of the Depot Garage, on the platform of which were two additional trucks which interfered with traffic seeking entrance into the garage.

Appellant's sedan was disabled and parked on Sixth avenue south between King and Weller streets. The disabled sedan was attached by a tow rope to a borrowed automobile, which was sixteen feet long and six feet wide, and towed by appellant south on Sixth avenue south to Weller street; thence west to Fifth avenue south; thence north on Fifth avenue south, it being appellant's intention to place his disabled vehicle in the Depot Garage.

When appellant arrived at a point a few feet south of the garage, about the middle of the block on Fifth avenue south between Jackson and King streets, a truck was parked im-

mediately south of the garage, extending out into appellant's line of travel, and two trucks were parked on the garage platform. Appellant stopped his automobile parallel with, and on the left side of, the truck, so close that the right-hand door of his automobile could not be used for egress or ingress. Appellant emerged through the left doorway of his automobile and made a short unsuccessful search for the truck operator, who was absent from his vehicle. Appellant then returned to his automobile and, with assistance of a friend who was accompanying him, pushed the disabled car forward and shortened the tow rope six or eight feet. Appellant, after his friend got into the disabled automobile, walked out into the lane of traffic, looked south and saw respondent's bus, which was thirty-three feet long and eight feet wide, at King street, a distance of approximately 140 feet. As the right door of his towing automobile was blocked by the parked truck, appellant walked north along the left side of his automobile, his back to the south, and, as he took hold of the handle of the left side door with his hand—he testified it was his right hand, but a physician gave his opinion that appellant used his left hand—in an endeavor to open that door, the front of respondent's bus struck and carried him about twenty feet, as a result of which accident his left arm was amputated.

The bus operator testified the bus was traveling fifteen miles an hour, six feet east of center line of the highway until it arrived at King street, when he swerved over to center line; that, when the bus was ten or twelve feet behind the disabled automobile, the operator saw between the disabled automobile and the towing automobile a man, who appeared as if he had arisen from a stooping position. The operator then slowed the bus to ten or twelve miles an hour and did not again see appellant until after the accident. That is, the bus operator did not see appellant until approximately twenty-eight feet south of appellant, who was then entering or preparing to enter the lane in which his automobiles were parked, to walk a distance of less than twenty feet to re-enter through the left doorway his towing

automobile. At that time, the bus was traveling not less than eighteen feet a second.

The northbound traffic lane is twenty-seven and one-half feet wide. If you subtract therefrom the width (six feet) of appellant's automobile and allow an extra three and one-half feet in addition to the seven feet usually occupied by parking vehicles at the scene of the accident, a clear space of eleven feet west of the west side of appellant's automobile remained in the northbound traffic lane in which to operate the bus.

Counsel for appellant contend that the court should have instructed the jury to return a verdict in favor of appellant. Counsel for respondent argue that appellant was guilty of contributory negligence barring recovery as a matter of law, as he stepped from a place of safety between two cars standing in the middle of a busy highway into the path of an approaching bus, turned his back on the approaching vehicle, and continued walking in the middle of the highway without further regard to such vehicle.

■ The conflicting evidence precludes concurrence in either contention. Were appellant's disabled automobile and his towing vehicle so parked as to afford sufficient space in northbound lane for safe passage of traffic from the south? Was respondent's operator a distance of twenty-eight feet, or in time less than two seconds, south of appellant when he first saw appellant or was the distance 140 feet, or eight seconds? Did appellant, without regard to the approaching bus which he saw when it was twenty-eight or 140 feet south of him, step from between his two automobiles into the path of that vehicle and walk twenty feet or less in the middle of the highway with his back to the bus? Did respondent's operator see appellant in time to avoid striking him? Did appellant see the approaching bus in time to have escaped injury? Did appellant and/or respondent's operator exercise the care which an ordinarily prudent person would exercise under like circumstances?

Whether respondent was guilty of actionable negligence and whether appellant was guilty of contributory negli-

gence, were questions of fact for the determination of the jury.

"Where the nature and attributes of the act relied upon to show negligence, constituting a proximate cause of the injury complained of, can only be clearly determined by considering all the attending and surrounding circumstances of the transaction in question, it falls within the province of the jury to pass upon the character of such circumstances . . .

"If the evidence on the question of negligence is conflicting or such that reasonable men can draw different conclusions therefrom, the question is one for the jury." 10 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) 239, § 6594.

■ Appellant complains of instruction No. 6, by which the court charged the jury,

"You are instructed that Section 38 of Ordinance No. 68700, being the City Traffic Ordinance, provides in part as follows:

" 'Pedestrians shall not step into that portion of the street open to moving traffic at any point between intersections in the Central District, or in any business district or on any arterial highway, except to board or alight from a street car and except at marked crosswalks or other places specially provided.'

"Any violation of this law is negligence.

"This plaintiff claims that he was walking in the street, between intersections, and therefore he violated this law and was therefore negligent; if this negligence directly and proximately contributed to his injury then it would be contributory negligence and if so, he can not recover."

Appellant contends that the vice of the instruction is that it charges the jury that appellant was guilty of negligence in being on the street and fails to qualify it, as appellant requested, by giving the cautionary instruction as to the necessity of appellant's presence in the street. In other words, while a violation of law is negligence *per se,* there may be, as in the case at bar, circumstances and conditions which excuse an offender's disobedience of the strict wording of a statute.

Under the statute (Rem. Rev. Stat., Vol. 7A, § 6360-1 [P.P.C. § 284-3] (11)) which defines a "pedestrian" as "Any

person afoot," appellant was a pedestrian at the time he was struck by respondent's bus. The vice of the instruction is that the jury was charged that appellant was guilty of negligence *per se* merely because in violation of the city ordinance he stepped "into that portion of the street open to moving traffic," etc., without the qualification that, if he necessarily stepped into the street at a point so close to the parked truck that it was impracticable or impossible for him to enter his automobile by way of the right-hand door, then it was not negligence in and of itself for appellant to attempt to enter his automobile by using the left-hand doorway of the automobile.

In its application, the language of the ordinance must be given a construction conformable to reason and common sense. If appellant is to be believed, the conditions confronting him necessitated parking as he did, and he was thereby prevented from entering his automobile except by way of its left-hand door. Also, if his testimony is true, he left sufficient space in which respondent's bus could have traveled without striking appellant.

Notwithstanding there is no express statutory provision denying to one who killed his ancestor the right to inherit from him, he is not entitled to so inherit. We so held in *In re Tyler's Estate,* 140 Wash. 679, 250 Pac. 456, 51 A. L. R. 1088, following the rule that a thing within the letter of the law, but not within its spirit, may be held inoperative where it would lead to an absurd conclusion. See, also, *Davis v. North Coast Transp. Co.,* 160 Wash. 576, 295 Pac. 921.

The meaning of the old Bolognian statute, which provided that whoever drew blood in the streets should be severely punished, was certainly as clear upon its face as Seattle ordinance No. 68700, but could that statute apply to the case of a barber who opened a vein of a patient in the street less reasonably than the trial court's unqualified application by instruction No. 6 of the city ordinance to the facts in the case at bar?

"There was a statute in Bologna that whoever drew blood in the streets should be severely punished, and yet it was held not to apply to the case of a barber who opened a vein

in the street. It is commanded in the Decalogue that no work shall be done upon the Sabbath, and yet, giving the command a rational interpretation founded upon its design, the Infallible Judge held that it did not prohibit works of necessity, charity or benevolence on that day." *Riggs v. Palmer,* 115 N. Y. 506, 22 N. E. 188, 12 Am. St. 819, 5 L. R. A. 340.

In 1 Blackstone's Commentaries 91, the learned author observes with reference to the construction of statutes,

"If there arise out of them collaterally any absurd consequences, manifestly contradictory to common reason, they are, with regard to those collateral consequences, void. . . . Where some collateral matter arises out of the general words, and happens to be unreasonable, there the judges are in decency to conclude that this consequence was not foreseen by the parliament, and therefore they are at liberty to expound the statute by equity, and only *quoad hoc* disregard it."

In *O'Neil v. Gruhn,* 197 Wash. 557, 85 P. (2d) 1064, it was contended that the stopping of two trucks so that there was only a clearance between them of ten or eleven feet violated the statute which provided that in no event shall any person park, or leave standing, any vehicle upon any highway, unless a clear and unobstructed width of not less than sixteen feet upon the main traveled portion of the highway opposite such standing vehicle shall be left for free passage of other vehicles. We held that the statute must be given a reasonable construction, and that it is not violated if there is a proper excuse or necessity for stopping upon the highway and a reasonable effort is made to leave a clearance of sixteen feet for other vehicles, as specified in the statute. See, also, *Grubbs v. Grayson,* 165 Wash. 548, 5 P. (2d) 1033.

*Nylund v. Johnston,* 19 Wn. (2d) 163, 141 P. (2d) 863, cited by respondent, is not in point. In that case, appellant's progress from the time he left the tavern until he was struck by an automobile was continuous, during all of which time he was afoot and on the pavement. We said:

"Moreover, there was absolutely no emergency, nor even necessity, requiring him to approach, or be at, the left-hand side of his car. On the contrary, the sidewalks on each side of the avenue and the connecting crosswalk at the intersec-

tion seventy feet away were not only at immediate hand for his use, but, under the mandate of the statute, constituted his required course of progress and afforded him full protection. His choice of route was solely for his own convenience. We entertain no doubt whatever that appellant's status was that of a pedestrian within the meaning of the statute."

The judgment is reversed, and the cause remanded with direction to the trial court to grant the motion for a new trial.

BEALS, C. J., STEINERT, SIMPSON, and MALLERY, JJ., concur.