[No. 30886.   Department Two.   August 12, 1949.]

G. J. MEYER, *Appellant*, v. ROLLAND SIMPSON, *Respondent*.[1]

*Norman L. Schwalb*, for appellant.

*J. Harold Anderson*, for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment rendered for services for architectural work in connection with the remodeling of a building.

Plaintiff commenced an action alleging that he and defendant entered into an oral contract whereby defendant agreed to draw plans, supervise construction, and act as general architect in the remodeling of a building; that at the time, defendant was not an architect licensed by the state of Washington, and his employment as such was in violation of the laws of the state; that the plaintiff paid defendant three hundred fifty dollars on account of the contract. Plaintiff prayed for a decree rescinding the contract and for a return of the three hundred fifty dollars paid thereon.

Defendant answered, denying that he entered into the contract as an architect, and cross-complained, alleging that, at the special instance and request of the plaintiff he performed work and services for the plaintiff consisting of mak-

[1] Reported in 209 P. (2d) 294.

ing plans, etc., of the agreed and reasonable value of one thousand five hundred dollars, of which three hundred fifty dollars had been paid, leaving a balance due of one thousand one hundred fifty dollars, and praying for judgment in that amount.

Plaintiff Meyer is the owner of a building in Leavenworth, which he wanted remodeled into an apartment house. In the Dryden telephone book he found the name, "Rolland Simpson, Architect." Some time in April, 1947, he contacted Simpson, and it was orally agreed that Simpson was to prepare preliminary sketches, working drawings, specifications, arrange for contracts, prepare detail and shop drawings, supervise construction, issue certificates of payment to contractors, and make final inspection for acceptance of work. The compensation was to be two thousand five hundred dollars, of which three hundred fifty dollars was paid down. Simpson is a graduate of the University of Washington School of Architecture, but has not obtained an architect's license from the state.

Plans were drawn, specifications prepared, and Simpson accompanied Meyer to Spokane and Seattle in connection with obtaining a loan for the remodeling of the building. A call for bids was advertised in the Daily Journal of Commerce. It stated:

"LEAVENWORTH APT. UNITS
Call for Bids
"Notice is hereby given that G. J. Meyer, Leavenworth, Washington, will receive sealed bids at Tumwater Cafe, Phone Leavenworth 395, Leavenworth, Washington, for remodeling Odd Fellows Hall into twenty apartment units.

"Each bid shall be in accordance with the plans, specifications, and other contract documents now on file with the architect, Rod Simpson, Cashmere, Washington.

"The architect, Rod Simpson, reserves the right to reject any or all bids and to waive all informalities [sic] in the bidding.

"Dated this 7th day of June, 1947.

"(8533-B) Signed: G. J. MEYER."

Meyer testified that the ad was prepared in Simpson's office, but the latter denied having any knowledge of it. The

specifications were very complete, consisting of sixteen sections, with numerous subsections under each heading. Section 2-19 provided:

"The contractor shall maintain a suitable progress schedule to indicate the percentage of work completed at any time. Actual progress shall be entered thereon at the end of each week and three copies immediately delivered to the architect."

Section 2-20 provided:

"Previous to the first payment under this contract, the contractor shall submit to the architect a schedule of prices covering the various divisions of the work to be done under this contract. . . ."

Section 2-21 provided:

"Unless otherwise provided in the contract, the owner shall make partial payments as the work progresses upon application of the contractor, not oftener than once each month, based on the schedule of prices of 90% of the value of labor and materials incorporated in the work and of 75% of all stable materials stored at the site for incorporation in the work. Upon completion and acceptance by the architect of all work required under this contract, the amount due the contractor will be paid by the owner upon the issuance of a certificate of completion by the architect . . ."

However, the specifications were headed:

"SPECIFICATIONS
FOR
ALTERATION TO I. O. O. F. BUILDING"
"LEAVENWORTH, WASHINGTON
MR. G. J. MEYER
OWNER

ROD O. SIMPSON
ARCH. DESIGNER          CASHMERE, WASHINGTON"

Section 1 stated:

"Bids shall be on the attached form, which shall be enclosed in a sealed envelope marked with the name of the bidder and the title of the work. The bids shall be delivered to:

R. O. SIMPSON, ARCH. DESIGNER
CASHMERE, WASH.

on or before noon _____"

In the course of his direct testimony as an adverse witness, Mr. Simpson testified:

"Q. Why did you use the word, 'architect', if you are not an architect? A. Those specifications are taken from a master copy and as long as I felt that Mr. Meyers was acquainted with the fact, there was no harm in using the word there. Q. It was taken from a form? A. A master copy of specifications. Q. Is that put out for architects? A. Yes. Q. And you felt qualified to use it? A. I felt it was necessary to use it. . . .

"Q. Do you know what an architect does in preparing plans and constructing buildings? A. Yes. Q. Do you know what you do in your occupation as a designer? A. Yes. Q. Is there any difference between the two? A. Not a great deal. Q. What difference is there between the two? A. Well, there is no difference except that the architect can use that word because he is licensed. Q. And you cannot use that word because you are not licensed? A. That's right."

Simpson testified that when he and his nephew were measuring the building, he overheard his nephew tell Meyer that Simpson was not licensed and that Meyer said that that would make no difference. This was also testified to by the nephew. Meyer denied that such a conversation took place. Under cross-examination the nephew testified that he related this conversation to Simpson when the latter told him he was being sued by Meyer. He stated: "And I told him Mr. Meyer knew he wasn't licensed because I had told him." It would seem from the record that this was Simpson's first knowledge of such a conversation. However, in its memorandum decision, the trial court stated:

". . . The evidence convinces me that the Plaintiff Meyer was advised at the very outset that Defendant Simpson was not licensed as an architect. The defendant's own testimony, supplemented by that of his nephew, is convincing that the plaintiff knew, when measurements of the building were taken, that Rolland Simpson, while a graduate of the University of Washington, in the School of Architecture, had not received his license."

The testimony being in conflict on that point, we feel constrained to follow the finding of the trial court, not that

Meyer was advised at the very outset, but that he was so advised at the time of the measurement of the building, which was subsequent to the entering into of the contract.

Rem. Rev. Stat., § 8270 [P.P.C. § 271-1], *et seq.*, created a Board of Architectural Examiners, providing for an architectural examination, regulating the use of the title, "architect," designating an examination fee, providing for the issuance of certificates, making reciprocal arrangements between states and providing a penalty for violation thereof.

In *Sherwood v. Wise*, 132 Wash. 295, 232 Pac. 309, 42 A. L. R. 1219, Sherwood's assignor, Travis, entered into a contract of employment with Wise, by which he agreed, as an architect, to prepare plans and specifications for, and to superintend the construction of, a 61-room apartment house, for an agreed compensation of two thousand five hundred dollars. He represented himself to be an architect and capable of undertaking all such services. He not only so represented himself, before entering into the contract, but he signed the plans and specifications made by him for the construction of the building, as an architect. In holding that Sherwood could not recover on the contract, this court made an exhaustive study of the act, and said:

"This act does not in express terms make the mere rendering of architectural service by one not holding a license certificate unlawful, nor does it in express terms make a contract for such services by one not holding a license certificate unlawful and unenforcible; but the language of the act manifestly expresses the legislative intent that it shall be unlawful for one not holding a license certificate to assume the professional title of architect and as such enter into a contract to render architectural services. Now that is just what Travis did with reference to the construction of this building. He not only held himself out to Wise and wife as being an architect possessing architectural skill and learning, prior to the making of his contract of services with them, but he prepared plans and specifications in such detail as is usual for the construction of buildings of the dimension and cost of the one in question. The several sheets of the drawings of the proposed building, of which the specifications were a part, were signed by Travis as architect. . . .

"We think there is no escape from the conclusion that the contract for architectural services between Travis and Wise and wife, upon which Sherwood seeks recovery, was illegal and void and wholly unenforcible, leaving Travis and Sherwood, his assignee, without legal right of recovery thereon.

"We think it needs no argument or citation of authorities to demonstrate that this statute, providing for inquiry into the learning and skill of the applicant and prescribing penalties for the assuming of the title of architect and contracting as such without a license certificate, was enacted for the protection of the public and the prevention of improper persons assuming the title of architect and contracting for services as such."

The trial court in the present case relied upon the following language of the *Sherwood* opinion:

"We are not holding that an owner may not employ a builder to construct a building for him without the services of an architect, but are only holding at this time that one who holds himself out to be and assumes the title of architect and contracts for his services as such, without being licensed as this law requires, cannot recover compensation for such services, because in so holding himself out and in so contracting he violates this law."

█ Regardless of what he may have later found out, at the time the contract was entered into (and this action is based upon contract) Meyer went to and employed "Rolland Simpson, Architect." There is no testimony in the record anywhere that Simpson ever told Meyer, until this trouble arose, that he was not an architect. He entered into the contract as an architect, under which he performed services as an architect. The plans and specifications Simpson used for the job referred to himself as "the architect" or "architectural designer." He was introduced to various people by Meyer as his architect and never denied it. He not only permitted others to hold him out as an architect, but he assumed that title himself, and this is just what the statute aims to prevent. The contract upon which he seeks recovery in his cross-complaint "was illegal, void, and wholly unenforcible," and leaves him "without legal right

of recovery thereon." The contract being void, any services performed pursuant thereto cannot be recovered.

The judgment appealed from is reversed and the cause remanded with directions to grant the prayer of appellant's complaint and dismiss respondent's cross-complaint.

SIMPSON, C. J., JEFFERS, ROBINSON, and GRADY, JJ., concur.