[No. 40885.   En Banc.   May 28, 1970.]

THE STATE OF WASHINGTON, *on the Relation of Catherine Tarver, Appellant,* v. SIDNEY E. SMITH, *Respondent.**

*Edmund J. Wood,* for appellant.

*The Attorney General* and *Walter E. White, Assistant,* for respondent.

HALE, J.—The juvenile court for King County, in hearing a matter involving relator's custody of her three children, received and reviewed a caseworker's report. A copy of this report still remains in the records and files of the Department of Public Assistance. Asserting that this report contains false, misleading and prejudicial statements concerning her and her family, relator requested the department to conduct what the statute refers to as a fair hearing. RCW 74.08.070. Her purpose was not to change or increase the amount or rate of public assistance to which she might be eligible but rather to change, correct or expunge the caseworker's report. The department refused to hold such a

*Reported in 470 P.2d 172.

hearing and relator sought a writ of mandate in the superior court to order the Director of the Department of Public Assistance to conduct a fair hearing into the contents of the caseworker's report. From a judgment of the superior court entered on findings of fact and conclusions of law denying the writ of mandamus and dismissing relator's application for it, she appeals.

The lone issue raised by this appeal is whether an applicant or recipient of public assistance has a right under RCW 74.08.070 to a fair hearing before the Department of Public Assistance or one of its agencies for determining other than matters of eligibility for or the amounts, rates or types of public assistance. Fair hearings are granted under RCW 74.08.070 as follows:

> Any applicant or recipient feeling himself aggrieved by the decision of the department or any authorized agency of the department shall have the right to *a fair hearing* to be conducted by the director of the department or by a duly appointed, qualified and acting supervisor thereof, or by an examiner especially appointed by the director for such purpose. The hearing shall be conducted in the county in which the appellant resides, and a transcript of the testimony shall be made and included in the record, the costs of which shall be borne by the department. A copy of this transcript shall be given the appellant if request for same is made in writing by the appellant or his attorney of record.
>
> Any appellant who desires *a fair hearing* shall within sixty days after receiving notice of the decision of the department or an authorized agency of the department, file with the director a notice of appeal from the decision. It shall be the duty of the department upon receipt of such notice to set a date *for the fair hearing,* such date to be not more than thirty days after receipt of notice. The department shall notify the appellant of the time and place of said hearing at least five days prior to the date thereof by registered mail or by personal service upon said appellant, unless otherwise agreed by appellant and the department.

(Italics ours.) Laws of 1959, ch. 26, § 74.08.070, p. 143.

Catherine Tarver had three minor children. May 6, 1967, during a time when she was receiving public assistance

under the statutory category of Aid to Families with Dependent Children, she was hospitalized. Seattle police placed her three children in the King County youth center under the care and protection of the Juvenile Court for King County. Two days later, May 8, 1967, while relator remained in the hospital, the juvenile court transferred the three children to the Department of Public Assistance for care, maintenance and protection. From May 6, 1967, during the remainder of relator's stay in the hospital, and until June 22, 1967, she received no public assistance money. Relator did apply for general assistance on June 22, 1967, and the Department of Public Assistance approved her application as of that date. At the time general assistance was granted, relator's three children were not in her custody.

According to the findings of fact, a caseworker in the King County office of the Department of Public Assistance, sent a written report June 30, 1967, to the chief juvenile probation office of King County recommending relator's three children be placed in the temporary custody of the Department of Public Assistance as wards of the juvenile court. The department retained a copy of this report in its files. August 4, the King County Superior Court, Juvenile Department, declared the three children to be wards of the court and placed them in the temporary custody of the King County office of the Department of Public Assistance.

A few weeks later, August 24, relator requested the Department of Public Assistance for *a fair hearing* under RCW 74.08.070, contending that the report forwarded to the court was false, misleading and prejudicial, and that if a fair hearing were had concerning it the report would be changed and corrected. September 12, 1967, the King County Juvenile Court heard the matters relating to the custody of relator's three children. Relator was present and represented by counsel at this juvenile court hearing and testified on her own behalf. The court read the caseworker's report and heard her testimony supporting it. Notwithstanding the assertedly derogatory contents of the caseworker's report and testimony, the juvenile court, after the hearing, discharged relator's three children from the tem-

porary custody of the Department of Public Assistance and returned them to relator's custody.

Relator contends that she has a right nevertheless to *a fair hearing* on the caseworker's report. The state director contends that the right to a fair hearing under the statute does not extend to collateral matters but exists only where an applicant or recipient of public assistance who is seeking a hearing asserts grievances directly related to eligibility and entitlement for public assistance and the amount and manner of providing it. The right to a fair hearing as provided by this statute, says the department, does not extend to general grievances against the department nor to matters not directly related to eligibility for public assistance. Relator urges in reply that, even if the statute once was susceptible to the department's construction of it, an amendment imposing affirmative investigative duties on the department requires a different interpretation now. This section (RCW 74.13.031(2); Laws of 1967, ch. 172, § 17, p. 863), imposes on the department a duty to:

> Investigate complaints of neglect, abuse, or abandonment of children by parents, guardians, custodians, or persons serving in loco parentis, and on the basis of the findings of such investigation, offer child welfare services in relation to the problem to such parents, guardians, custodians or persons serving in loco parentis, and/or bring the situation to the attention of an appropriate court, or another community agency.

█ The main purpose of statutory interpretation is first to ascertain and then to give effect to the legislative intention. *Krystad v. Lau,* 65 Wn.2d 827, 844, 400 P.2d 72 (1965). In discharging this duty, the court first looks at the language of the statute. *Schneider v. Forcier,* 67 Wn.2d 161, 406 P.2d 935 (1965). If the language is clear and the meaning plain, the statute needs no construction and the courts will neither read into it things which are not there nor amend it by construction. *King County v. Seattle,* 70 Wn.2d 988, 425 P.2d 887 (1967). A statute should be read as a whole and legislative intent derived from it as a whole. *Krystad v. Lau, supra; Finley v. Finley,* 43 Wn.2d 755, 264

P.2d 246 (1953). Legislative intent cannot be ascertained from a single sentence or even a solitary isolated paragraph (*Markham Adv. Co. v. State*, 73 Wn.2d 405, 439 P.2d 248 (1968)), for the meaning of a particular part or section of a statute is to be taken in context with the parts or sections in which it is found. *Nationwide Papers, Inc. v. Northwest Egg Sales, Inc.*, 69 Wn.2d 72, 416 P.2d 687 (1966); *Mercer Island v. Kaltenbach*, 60 Wn.2d 105, 371 P.2d 1009 (1962).

■ Genesis of the statutory right to *a fair hearing* as authorized in statutes providing for the disbursement of public funds for public assistance shows, we think, a legislative intention to limit this right to cases in which an applicant or recipient states a grievance concerning his eligibility for or the amounts and rates and types of assistance or the manner and method of supplying it. The statute has its roots in the early efforts of the people of this state and nation in taking direct action to relieve the nationwide distress and misery produced by a persisting and baneful economic depression. First, the state placed upon the counties a duty to provide assistance to elderly persons in need. Laws of 1933, ch. 29, p. 173. Then, Laws of 1935, ch. 176, p. 646, created a State Department of Public Welfare and, relieving the counties of the 1933 duties toward the elderly (chapter 182, page 855), established a state system for old age pensions. The next session enlarged and amplified these measures. Laws of 1937, ch. 114, p. 452, provided for aid to dependent children; Laws of 1937, ch. 132, p. 489, assistance to the blind; and Laws of 1937, ch. 156, p. 548, amended the provisions for old age assistance.

The statutory right to a fair hearing in public welfare was first granted by an initiative in 1941 relating to old age assistance. Laws of 1941, ch. 1, p. 3. Sections 7 and 8, at 7 (Rem. Supp. 1941, §§ 9998-40, 9998-41), limited the granting, denial and eligibility for old age assistance as follows:

> Sec. 7. Whenever the department or an authorized agency thereof receives an application for a grant, an investigation and record shall be promptly made of the facts supporting the application. The department shall be required to approve or deny the application within thirty

days after the filing thereof and shall immediately notify the applicant . . .

Sec. 8. Any applicant feeling himself aggrieved by the decision of the department or an authorized agency of the department, shall have the right to a fair hearing . . .

But, although the fair hearing was initially limited to grievances of an applicant pertaining to the granting or denying of old age assistance, a subsequent amendment extended it to the blind as well. Laws of 1949, ch. 6, § 8, p. 29. A reenactment of this provision authorized a fair hearing on a decision of the department which concerned the eligibility of an applicant, either blind or elderly, to receive assistance. In 1953, the provision for a fair hearing was carried forward into the statutory scheme which created the Department of Public Assistance and consolidated to a major degree the state's activities in attempting to provide for the welfare of the elderly, the blind, and families with dependent children. This latter statute also referred to the entitled party as an applicant or recipient aggrieved at a decision of the department or its agents. Laws of 1953, ch. 174, p. 343. The same legislative purpose, we think, is carried forward in the statute as again reenacted in its present form. Laws of 1959, ch. 26, § 74.08.070, p. 143, *ante*, p. 2.

The three sections next preceding RCW 74.08.070 all concern eligibility for public assistance. RCW 74.08.050, 74.08.055 and 74.08.060 prescribe the procedures for applying for and receiving public assistance, and RCW 74.08.060 refers specifically to the decision of the department made on response to such application. It thus follows that the people in legislating by initiative originally and the legislature in legislating by bill subsequently, intended to provide a fair hearing only on review or consideration of a decision of the Department of Public Assistance, or its authorized agency made in ruling upon an applicant or recipient's entitlement to, eligibility for, and the kinds and amounts of public assistance.

The fair hearing provision was not intended, we think, to create a forum for litigating general grievances against the

department or the general administration of the public assistance and welfare laws. Had the legislature intended to create tribunals for and extend the right to fair hearings to complaints and grievances on matters collateral to the granting, denial or modification of public assistance, it could have done so explicitly in a few words. Instead, it chose language explicitly showing an intention to limit the hearings. Thus, RCW 74.08.080, which says, *inter alia*, that, if an *applicant* or *recipient* of public assistance prevails at the fair hearing, the benefits accruing from his victory shall be paid to him as of the time of the decision of the department or its agents from which the recipient or applicant requested a fair hearing, means that the fair hearing shall be limited to questions of eligibility for, and the amounts and kinds of public assistance to be granted.

The latest amendment, Laws of 1969, 1st Ex. Ses., ch. 172, § 1, p. 1244, in our opinion, confirms the idea that the fair hearing authorized by the statute relates to eligibility and the amounts and kinds of assistance, and not to collateral matters. The amended RCW 74.08.070 again provides that, if as a result of the fair hearing the director rules in favor of the applicant, "assistance shall be paid from the date of the denial of the application or forty-five days following the date of application, whichever is sooner; or in the case of a recipient, from the effective date of the initial departmental county office decision."

We do not see that the additional responsibilities imposed by RCW 74.13.031 (2) on the department to investigate suspected cases of child abuse and neglect reflect any change in legislative purpose or intention with respect to the right to a fair hearing.

Applying the rules of construction early referred to and viewing the statute in its historical development, we think that the fair hearing authorized by RCW 74.08.080 means a hearing by one aggrieved at the decision of the Department of Public Assistance or its agent as to the eligibility and qualification of an applicant for or recipient of public assistance to receive or continue to receive public assistance, and the amount or kind of assistance granted or denied.

When one considers the great need for and the great number of persons vitally affected by the administration of the public assistance laws, especially among the blind, the elderly, and the very young, we think that the legislature tried to design an operation which would achieve a maximum result in getting the assistance where it is needed and it hoped to minimize the areas of dispute, contest and argumentation. To provide governmental machinery for hearings on matters not directly connected with the achievement of the avowed aims of the public assistance laws could conceivably divert the energies and the time and money from public assistance to collateral affairs. The statute thus provides for hearings only where they go directly to grievances relating to the administration of the law itself—to issues of eligibility to receive and the amount of public assistance to be provided. The *fair hearings* prescribed by this statute, therefore, are not available to applicants or recipients in collateral matters not directly affecting their rights to or the amounts and kinds of assistance to which they may be entitled.

Since the fair hearing sought here does not relate to any decision of the State Department of Public Assistance or that of its authorized agencies concerning the petitioner's eligibility or qualification for, or the amounts and kinds of public assistance for which she has applied, the superior court properly denied her application for a writ of mandamus.

Affirmed.

HUNTER, C. J., FINLEY, ROSELLINI, HAMILTON, NEILL, McGOVERN, and STAFFORD, JJ., concur.

August 3, 1970. Petition for rehearing denied.