[No. 40711.    En Banc.    July 1, 1971.]

DONALD MURPHY *et al.*, *Appellants*, v. CAMPBELL INVESTMENT COMPANY, *Respondent.*

*McCrea, Kafer, Gissberg & Wilson,* by *Benjamin A. Luchini,* for appellants.

*Allen, DeGarmo & Leedy,* by *Bruce T. Rinker,* for respondent.

FINLEY, J.—Appellants Murphy and Paulosky, doing business as Murphy and Paulosky Enterprises, applied to the Division of Professional Licensing for a specialty contractor's certificate of registration, pursuant to RCW 18.27. Appellants' application, dated November 4, 1967, was received by the division on November 8, and was rejected because appellants—who, in fact, carried public liability and property damage insurance as required by RCW 18.27.050—failed to include proof of such insurance in their application.

Contemporaneously, appellants were negotiating contracts with an agent of respondent, Campbell Investment Co., to provide labor, materials and equipment for construction to be done upon respondent's property. The parties signed two separate contracts on November 19, 1967, and work was commenced immediately. On December 7, 1967, appellants resubmitted their application for a certificate of registration, including therewith proof of the requisite statutorily-prescribed insurance. Thereafter, appellants' registration certificate was promptly issued.

During the course of appellants' performance of construction work regarding respondent's property, a dispute arose between the parties. Respondent refused to make more than the first two payments and thereafter terminated the agreement with appellants for construction work. Appellants then filed notices of lien claims and commenced the instant action. The trial court dismissed appellants' amended complaint for failure to state a claim upon which relief could be granted, and this appeal followed.

Appellants' amended complaint asserted four claims. The first two sought to foreclose appellants' mechanics' liens; the third sought relief through quantum meruit; the fourth claim was treated by the trial court as one for relief upon fraud. Respondent's central defense to appellants' claims is based upon the wording of RCW 18.27.080, which provides:

No person engaged in the business or acting in the capacity of a contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any work or for breach of any contract for which registration is required under this chapter *without alleging and proving that he was a duly registered contractor at the time he contracted for the performance of such work or entered into such contract.*

(Italics ours.)

There can be no dispute that appellants are contractors within the meaning of RCW 18.27, or that appellants did not possess the requisite certificate of registration prescribed by RCW 18.27.020. The trial court felt constrained to dismiss appellants' first three claims in light of the wording of RCW 18.27.080.

Appellants argue, however, that a strict construction of RCW 18.27.020 and RCW 18.27.080 will cause a gross injustice. They allege that, even though their original application for certification was faulty, they nevertheless possessed the statutorily-required insurance. Appellants reason that their possession of such insurance conformed to the purpose of RCW 18.27, and that the statutes in question should be liberally or functionally construed in terms of the doctrine of substantial compliance. We agree.

We are convinced that the interpretation of these statutes urged by respondents fails to give a relevant and rational effect to the statutory scheme involved in RCW 18.27. An absolute or uncritical application of the questioned statutes would produce an unnecessary and unrealistic result. In this light, it is appropriate to comment that, in some quarters, there is considerable misunderstanding or disregard relative to the traditional and accepted nature of the judicial function in that important area of law involving the interpretation of legislative enactments.

But, unquestionably, the interpretation of statutes has, historically and traditionally, been the role or function of the judiciary as an interrelated or close counterpart to the recognized function of the legislative branch of govern-

ment. The scope and importance of this function is clearly recognized and accepted by most highly respectable modern authorities. *See, e.g.,* Llewellyn, *Remarks on the Theory of Appellate Decision and Rules or Canons About How Statutes are to be Construed,* 3 Vand. L. Rev. 395 (1950); Loyd, *Equity of a Statute,* 58 U. Pa. L. Rev. 76 (1909); Radin, *Realism in Statutory Interpretation and Elsewhere,* 23 Calif. L. Rev. 156 (1934); Horack, *Statutory Interpretation—Light from Plowden's Reports,* 19 Ky. L.J. 211 (1931).

It is a disservice or disfunction for the judicial branch to be dissuaded from performing its traditional interpretative function because nowadays—through intellectual phobia or myopia, or because of other more pragmatic political reasons—there is some tendency in some quarters to characterize performance of the traditional function as "judicial legislation"—a superficially appealing cliché, to say the least.

It should be quite obvious that:

> There are times when even the *literal expression* of legislation may be *inconsistent with the general objectives or policy behind it,* . . .

(Italics ours.) J. Sutherland, Statutes and Statutory Construction § 6006 (Horack 3d ed. 1943).

In this connection, it is well recognized that the underlying purpose inherent in the function of judicial interpretation of statutory enactments is to *effectuate the objective* —often referred to as the intent—of the legislature. Interestingly enough, in recognition of this purpose, early English courts developed and applied the so-called "equity of the statute" doctrine, perhaps best illustrated by a statement in the early English case of *Eyston v. Studd,* 75 Eng. Rep. 688, 2 Plowden 460, 464 (1574), as follows:

> *intent of statutes is more to be regarded and pursued than the precise letter of them,* for oftentimes things, which are within the words of statutes, are out of the purview of them, which purview extends no further than the intent of the makers of the Act, *and the best way to construe an Act of Parliament is according to the intent* rather than according to the words.

(Italics ours.) And this court has long held that a thing within the letter of the law, but not within its spirit, may be held inoperative where it would otherwise lead to an absurd conclusion. *See, e.g., Discargar v. Seattle,* 25 Wn.2d 306, 171 P.2d 205 (1946). In *Discargar,* this court, quoting from *Riggs v. Palmer,* 115 N.Y. 506, 22 N.E. 188, 12 Am. St. 819, 5 L.R.A. 340 (1889) stated, at page 311:

"There was a statute in Bologna that whoever drew blood in the streets should be severely punished, and yet it was held not to apply to the case of a barber who opened a vein in the street. It is commanded in the Decalogue that no work shall be done upon the Sabbath, and yet, *giving the command a rational interpretation founded upon its design,* the Infallible Judge held that it did not prohibit works of necessity, charity or benevolence on that day."

(Italics ours.)

Upon the facts presented in the instant appeal, it is our belief that the trial court's reading of the statutes fails to give the questioned statutory scheme a "rational interpretation founded upon its design." There can be little doubt as to the legislatively intended "design" of RCW 18.27, relating to the registration of contractors. We have recently stated that:

RCW 18.27, *et seq.,* was designed to prevent the victimizing of a defenseless public by unreliable, fraudulent and incompetent contractors, many of whom operated a transient business from the relative safety of neighboring states.

*Stewart v. Hammond,* 78 Wn.2d 216, 219, 471 P.2d 90 (1970). The crucial devices utilized by the legislature to regulate and restrain unreliable, fraudulent, and incompetent contractors are contained in RCW 18.27.040, requiring a contractor's surety bond; and in RCW 18.27.050, requiring a contractor to obtain public liability and property damage insurance. These two named devices are designed to provide some protection—albeit minimal—for customers in today's "market place" against the financially irresponsible contractor.

The additional registration requirement imposed by RCW 18.27.020 is, essentially, merely an adjunct of, or to better implement, the requirements to insure minimum financial security for consumers (customers of building contractors). Such filing is designed to give public notice, and thus to aid those persons dealing with contractors in determining that such contractors have, in fact, met the minimal security and financial responsibility standards imposed by RCW 18.27.040 and 18.27.050.

In the instant case, the appellant contractors had, in fact, substantially complied with the requirements of RCW 18.27. They had secured both the bond required by RCW 18.27.040 and the liability insurance required by RCW 18.27.050. But for a technical defect in the appellants' original application for registration, the appellants would have possessed the requisite registration prior to the date upon which the parties entered into their written agreement.

In the instant case, it is a fact, as pointed out above, that the appellant contractors had substantially complied with the provisions of RCW 18.27; *i.e.*, they had secured bonding and insurance—those indicia of minimal financial responsibility required by the statutory enactment to protect the general public against the unreliable, fraudulent or incompetent contractor. Since appellants had substantially complied with the requirements crucial to the underlying design intended by the legislature in the enactment of RCW 18.27, we hold that the appellants' complaint does state a claim upon which relief can be granted. Consequently, the determination of the trial court must be reversed.

Although the above reasoning is sufficient to dispose of the instant matter, it is worth noting in passing that we find sound reasons of public policy behind denial of relief to appellants upon the other alleged grounds—*i.e.*, those in the nature of waiver, estoppel or unjust enrichment. In essence, this is true because the questioned statutory enactment is designed to protect the general public, and parties to a specific agreement should not be allowed the option of rewriting the statutory law as to themselves by agreeing to

disregard the obligations of financial responsibility imposed by the statutes. We reiterate, however, this cannot be said under circumstances where there has been substantial compliance by a contractor with the crucial requirements of a statutory scheme or design—necessary to effectuate its objectives.

For the above reasons, the determination of the trial court is reversed, and the case is remanded for further proceedings in accordance with this opinion.

HAMILTON, C.J., HUNTER, HALE, and NEILL, JJ., concur.

STAFFORD, J. (dissenting)—The majority has adequately related the essential facts, thus, nothing will be gained by repetition thereof.

It is important to note, however, that the amended complaint and appended documents make it clear that appellants *did not possess the requisite contractor's registration certificate*[1] *at the time they entered into the contracts.* Furthermore, the amended complaint *fails to allege that appellants were duly registered either at the time they contracted for the performance of the work or when they entered into the contract.* Thus, on the face of the pleadings, appellants were not entitled to "bring or maintain *any* action in *any* court . . . for the collection of compensation for the performance of *any work* or for *breach of any contract."* (Italics mine.) RCW 18.27.080.[2] As a result, the first two claims were properly dismissed.

The appellants contend strict enforcement of RCW 18.20.020 and RCW 18.27.080 will cause them an injustice.

[1]RCW 18.27.020. "It shall be unlawful for any person to submit any bid or do any work as a contractor *until such person shall have been issued a certificate of registration* by the state department of licenses. A partnership or joint venture shall be deemed registered if any one of the general partners or venturers whose name appears in the name under which the partnership or venture does business shall be registered. A violation of this section shall be a misdemeanor." (Italics mine.)

[2]RCW 18.27.080. "No person engaged in the business or acting in the capacity of a contractor may bring or maintain any action in any court of this state for the collection of compensation for the perform-

Thus, they assert, the two sections should be liberally construed to encompass the doctrine of substantial compliance. A majority of this court has agreed with that theory. As a result, the doctrine of substantial compliance has been superimposed upon the legislative enactment. It is a good example of hard cases making bad law.

To be perfectly candid, the courts of California have given *limited recognition* to use of the doctrine in connection with a similar statute. However, the majority of this court would discard even California's limited criteria for application of the doctrine: *i.e.*, (a) that the contract was at least valid *at the inception* by virtue of a then current license, (b) that the contractor readily obtained renewal *after the lapse,* (c) there is *some indicia* of the contractor's *continuing qualification* during the lapse.[3]

A review of the cases reveals few states have deemed it advisable to follow California's lead, much less to exceed it. Most have held an unlicensed contractor cannot enforce his contract or recover for services rendered thereunder[4] where the statute expressly provides that the contract of an unlicensed contractor cannot be enforced unless he first establishes he was duly licensed. 33 Am. Jur. *Licenses* § 69 at 386, § 70 at 387 (1941, Supp. 1970); *see also* the cases collected in 82 A.L.R.2d 1429 *et seq.* (1962). Furthermore,

ance of any work or for breach of any contract for which registration is required under this chapter *without alleging and proving* that he was a duly registered contractor at the time he contracted for the performance of such work or entered into such contract." (Italics mine.)

[3]For a review of California's contractor licensing statute see Case Notes, *"Substantial Compliance with Contractors Licensing Statutes,"* 7 Santa Clara Lawyer 157 (1966).

[4]We have previously held that an unlicensed person cannot recover under a contract where such service was of the type for which an occupational license is required. *Shorewood, Inc. v. Standring,* 19 Wn.2d 627, 144 P.2d 243 (1943); *Kinney v. Sando,* 28 Wn.2d 252, 182 P.2d 45 (1947), both of which interpret RCW 18.85.100. *Meyer v. Simpson,* 34 Wn.2d 486, 209 P.2d 294 (1949) interpreted RCW 18.08.010, since repealed by Laws of 1959, ch. 323, § 19, p. 1579.

*See also Stewart v. Hammond,* 78 Wn.2d 216, 471 P.2d 90 (1970), which, contrary to the position now taken by the majority, interprets RCW 18.27.020 and RCW 18.27.080 strictly.

most courts have held that if a contractor is not licensed *at the time specified in the statute,* he cannot enforce the contract even if he becomes duly licensed thereafter. These cases are collected in Annot., 82 A.L.R.2d 1429 § 4 (1962).

RCW 18.27.080 provides that a contractor must *allege and prove* that he was a "duly" registered contractor at the time he contracted for the performance of work or entered into a contract. In construing statutory language, each word must be given effect according to its usual and ordinary meaning. *Foremost Dairies, Inc. v. State Tax Comm'n,* 75 Wn.2d 758, 762, 453 P.2d 870 (1969). The word "duly" means "properly, regularly, sufficiently". Merriam-Webster Third International Dictionary (1966). This leaves no room for the use of substantial compliance as a means of watering down express language of a statute which appellants concede is designed for protection of the public.

Although RCW 18.27.020 provides only a minor criminal penalty for violations, the restrictions imposed by RCW 18.27.080 on the civil *enforcement* of contracts are meant to operate as additional sanctions. RCW 18.27.020 and RCW 18.27.080 represent a legislative determination that the importance of deterring unregistered persons from engaging in the contracting business outweighs any harshness between the parties. The injection of "substantial compliance" erodes the policy deemed necessary by the legislature for public protection.

The majority correctly states that statutory interpretation traditionally falls within the role of the judiciary as a counterpart of the recognized function of the legislature. Further, it is correct to say that the scope of judicial review includes the ascertainment of legislative intent and an attempt to effectuate legislative objectives. However, we have not yet gone so far as to hold that possession of the right to interpret gives us judicial license to modify or amend legislative enactments. In fact, we have consistently held to the contrary. In *State v. Spino,* 61 Wn.2d 246, 249, 377 P.2d 868 (1963), we said:

The rules of statutory construction can be used only to ascertain the meaning of a statute and not to modify it.

The rule was repeated in *State ex rel. Thigpen v. Kent,* 64 Wn.2d 823, 827, 394 P.2d 686 (1964). In *King County v. Seattle,* 70 Wn.2d 988, 991, 425 P.2d 887 (1967), we held:

The court will not read into a statute matters which are not there nor modify a statute by construction.

*See also, State ex rel. Tarver v. Smith,* 78 Wn.2d 152, 155, 470 P.2d 172 (1970), as well as *Anderson v. Seattle,* 78 Wn.2d 201, 202, 471 P.2d 87 (1970), in which we stated:

It is neither the function nor the prerogative of courts to modify legislative enactments.

Possession of the power to act carries with it a corresponding duty to exercise it with some restraint. It is a giant step from giving the statutory scheme "a rational interpretation founded upon its design", as suggested by the majority, to the emasculation of the statute under the guise of interpretation.

By a stroke of the pen, the majority has done more to destroy the effectiveness of RCW 18.27 than the legislative opponents were able to accomplish during the statute's stormy legislative history.

It is not denied that refusal to adopt the doctrine of substantial compliance may lead to a harsh result in isolated cases. One may well be sympathetic with the argument of the contractor. This, however, is a matter that should be directed to the legislature, not the court.

Appellants' third claim is based on quantum meruit. It is contended that even if they are not entitled to maintain an action for the performance of services or an alleged breach of contract, they are entitled to recover for the reasonable value of material and equipment furnished. They rely on *Lund v. Bruflat,* 159 Wash. 89, 292 P. 112 (1930) and *Ogilvy v. Peck,* 200 Wash. 122, 93 P.2d 289 (1939).

Clearly, *Ogilvy* is not in point and need not be considered. *Lund* involved an action for recovery of the reasonable value of labor and material furnished by a plumber

who was not licensed to carry on such trade. The court denied recovery for his services, but granted him the reasonable value of material furnished holding that the furnishing of materials did not constitute the doing of "plumbing work" prohibited by the ordinance.

*Lund,* however, does not support appellants' position. The statutes in the instant case require strict compliance and even contain civil sanctions for noncompliance. RCW 18.27.080 declares that an unregistered contractor may not "bring or maintain *any action . . . for the collection of* compensation for the performance of *any work or for breach of any contract* for which registration is required." (Italics mine.) The ordinance involved in *Lund* contained no such language.

In considering whether an unlicensed artisan or contractor can recover either for his services or for materials on grounds other than enforcement of the contract, the courts have generally held that recovery may not be based on quantum meruit. *Northen v. Elledge,* 72 Ariz. 166, 232 P.2d 111 (1951); *Kaiser v. Thomson,* 55 N.M. 270, 232 P.2d 142 (1951); *Cash v. Blackett,* 87 Cal. App. 2d 233, 196 P.2d 585 (1948); *Campbell v. Smith,* 68 N.M. 373, 362 P.2d 523 (1961);[5] *see also* the cases collected in 82 A.L.R.2d 1429 § 3(c) (1962). The reason generally given is that where a statute expressly provides that there shall be no recovery permitted because of noncompliance, no actionable cause arises from the contract. Annot., 30 A.L.R. 834 (1924); 33 Am. Jur. *Licenses* § 69 (1941). I feel the view is sound.

We now turn to the fourth claim denominated by the trial court as an action in fraud. Our rules require that the circumstances constituting fraud be pleaded with particularity. CR 9(b). In the case at hand, however, the amended complaint failed to allege one of the most basic of the nine essential elements of fraud—the representation of an *existing* fact. *Markov v. ABC Transfer & Storage Co.,* 76 Wn.2d 388, 457 P.2d 535 (1969); *Puget Sound Nat'l Bank v. Mc-*

---

[5]*Campbell v. Smith,* 68 N.M. 373, 362 P.2d 523 (1961) is limited to the subject of labor and services.

*Mahon,* 53 Wn.2d 51, 330 P.2d 559 (1958). The amended complaint alleged instead the representation of a *future* fact.

According to *Nyquist v. Foster,* 44 Wn.2d 465, 471, 268 P.2d 442 (1954), the test to determine whether a particular representation is one of an existing fact is as follows:

> Where the fulfillment or satisfaction of the thing represented depends upon a promised performance of a future act, or upon the occurrence of a future event, or upon particular future use, or future requirements of the representee, then the representation is not of an existing fact.

Fraud cannot be predicated upon a representation as to a *future* event, or on a promise to perform in the *future. Baertschi v. Jordan,* 68 Wn.2d 478, 413 P.2d 657 (1966). Such a statement would be no more than an "estimate" of something to take place in the future. By its very nature, it can be neither true nor false at the time it is made. If the rule were otherwise, any breach of contract would amount to fraud. *Nyquist v. Foster, supra.* Thus, insofar as the claim appears to rely on fraud, the trial court properly dismissed it. CR 12 (b) (6).

Appellants cite the well established rule that a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it appears beyond doubt that a plaintiff can prove *no* set of facts in support of the claim which would entitle him to relief. *Hofto v. Blumer,* 74 Wn.2d 321, 444 P.2d 657 (1968); *Sherwood v. Moxee School Dist. 90,* 58 Wn.2d 351, 363 P.2d 138 (1961). Both in oral argument and in their brief, appellants characterize the fourth claim as one of equitable estoppel, waiver or promissory estoppel as well as of fraud. They assert the amended complaint should not have been dismissed if they are entitled to recover on any one of these legal theories.

The doctrine of equitable estoppel can be disposed of almost summarily. The allegations do not support it. As in fraud, equitable estoppel requires the representation of an existing or past fact. *East Providence Credit Union v. Gere-*

*mia,* 103 R.I. 597, 239 A.2d 725 (1968); accord, *Hellbaum v. Burwell & Morford,* 1 Wn. App. 694, 463 P.2d 225 (1969). The other theories require some analysis, however.

The fourth claim alleges that respondent promised to refrain from resorting to the "contractor's registration act" as a bar to appellants' right to assert a claim under the contracts. Even though the promise does not appear to be supported by consideration, it is said to be enforceable under the doctrine of promissory estoppel. 1 Restatement of Contracts § 90 (1932). Under such a theory, the court is neither asked to create a new right nor to sustain an action on the promise. As stated in 1 S. Williston, A Treatise on the Law of Contracts § 140, p. 614 (3d ed. 1957):

> [I]t reaches the desired result by allowing . . . an original right to be enforced by merely prohibiting the interposition of a defense.

Thus, it is asserted that the doctrine of promissory estoppel prohibits respondent from interposing, as a defense, appellants' failure to comply with RCW 18.27.020 and RCW 18.27.080.

It is important to note, however, that proof of being duly registered is of importance to more than the immediate contracting parties. Among other things, the act requires that contractors carry public liability and property damage insurance. It also provides for suspension of a contractor's registration if such insurance ceases to be effective. RCW 18.27.050. If contracting parties can waive the requirements or otherwise render the statute inapplicable, a contractor could avoid the necessity of carrying such insurance. This could result in innocent third parties being forced to suffer the loss if injured by negligent activities of an insolvent contractor.[6] Thus, the court will not give credence to an attempted waiver or estoppel where the rights of the public are involved. *See* 56 Am. Jur. *Waiver* § 7 (1947); 92 C.J.S. *Waiver* at 1067 (1955).

---

[6]Parenthetically, the same could happen to those who furnish labor and materials. They, too, were meant to be protected by the bond provided for in RCW 18.27.040.

430

As previously noted, appellants concede the statutory requirements were designed for protection of the public. It is precisely for this reason that the doctrine of promissory estoppel is not applicable. One may not foreclose enforcement of a statute against himself if it has been passed for the benefit of the general public. An agreement to circumvent such a statute is void. *Grandview Inland Fruit Co. v. Hartford Fire Ins. Co.*, 189 Wash. 590, 66 P.2d 827, 109 A.L.R. 1472 (1937); *Motor Contract Co. v. Van Der Volgen*, 162 Wash. 449, 298 P. 705, 79 A.L.R. 29 (1931); 17 Am. Jur. 2d *Contracts* § 173 (1964). Estoppel may not be asserted to enforce a promise that is contrary to the policy of such a statute. *King County Employees' Ass'n v. State Employees' Retirement Bd.*, 54 Wn.2d 1, 336 P.2d 387 (1959); *State v. Northwest Magnesite Co.*, 28 Wn.2d 1, 182 P.2d 643 (1947). In such a case, public policy demands that the law override the doctrines of promissory estoppel and waiver. Any other rule would render enforcement of legislation enacted for the benefit of the general public subject to the whims of individuals.

The amended complaint fails to state a claim upon which relief can be granted. The trial court should be affirmed.

ROSELLINI, J., concurs with STAFFORD, J.